FRANK E. BROWN'S CASE.

Suffolk. March 9, 1956. — June 27, 1956.

Present: QUA, C.J., RONAN, WILKINS, COUNIHAN, & WHITTEMORE, JJ.

*Workmen's Compensation Act,* Injuries to which act applies; Procedure: notice, filing of claim. *Proximate Cause.*

Evidence in a workmen's compensation case warranted findings that an extremely heavy work load put by an employer upon a New England sales representative and the strain both physical and mental to which he was subjected by his activities in promoting and selling his employer's products brought about a heart condition culminating in a coronary attack which constituted a totally incapacitating personal injury arising out of and in the course of his employment. [346–347]

A proceeding under the workmen's compensation act following an incapacitating coronary attack was not barred by want of statutory notice of the injury or late filing of the claim for compensation where evidence warranted findings that the insured had knowledge of the heart trouble and the resulting incapacity, that the employee received proper and competent medical care and treatment, and that the insurer was not prejudiced by the want of notice or by the late filing of the claim. [347–348]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Morton*, J.

*James F. Casey*, for the insurer.

*Maurice F. Maher*, for the claimant.

COUNIHAN, J. This is an appeal by an insurer from a decree awarding compensation for total incapacity, as the result of a coronary occlusion, in accordance with a decision of a reviewing board which affirmed and adopted the findings and decision of the single member.

The claimant was employed by Cribben & Sexton Co. in the distribution and sale of Universal gas units since 1939 except for a period from sometime in 1942 to sometime in 1945. In 1945 when he resumed his employment he was assigned as sales representative to handle the entire New England area alone. From then on his duties consisted of training personnel of his customers in the sale of his employer's products, preparing and developing theatre programs and cooking school programs, attending conventions and meetings of department store and utility company executives and directors, and generally engaging in many forms of business and social activities in an effort to promote and sell his employer's products. In pursuit of these objects, the claimant drove an automobile about thirty-five thousand miles a year. He usually left his home in Quincy at 7:30 A.M. and returned about 9 P.M. or later, if at all.

On Thursday, July 20, 1950, he started on a trip that took him to Lowell, Nashua and Keene, New Hampshire, and Burlington, Vermont. While driving from Keene to Burlington, he felt pain in his arms and across his chest. He completed his trip, working in Vermont on Friday and Saturday. He drove to Portland, Maine, on Sunday and worked in Portland and Lewiston, Maine, and in Portsmouth, New Hampshire, on Monday. He drove back on Monday arriving at his home at about 9:30 P.M. All during his work from Thursday on he had a "little ache in his arms." On July 27, 1950, while working in his employer's warehouse he again experienced the pain from which he earlier had suffered. He could not breathe, was nauseated and sick to his stomach. He consulted his brother, an

osteopathic physician, who advised him to go home and go to bed. Sometime in September he went to Cape Cod for a few days. Then he went to Puerto Rico for seven weeks. He returned to work about the middle or latter part of December.

For the purpose of lightening his work load his employer late in 1949 or early in 1950 had hired an assistant for him. Shortly after he returned to work in December this assistant left him and a new man was hired. The claimant was required to train these men in their work and, when business fell off, at the employer's urging, he assisted the new man and covered some of his customers and his former territory.

On October 26, 1951, he attended a luncheon meeting in Boston in connection with his work. This luncheon was held on the second floor of a hotel and because the elevator was not working he had to walk up and down a long flight of stairs several times. Before the meeting was over he had another coronary attack with pain in his arms and chest. As a result he went home where he remained in bed for about a week or so. His brother, Dr. Brown, put him in the Massachusetts Osteopathic Hospital for about three weeks. Then on the advice of his physicians he went to Florida where he remained until the time of the hearing before the single member. He had done no work since October 26, 1951. He was paid his regular rate of pay of $200 a week by his employer until January 31, 1952, when he was put on sick leave at $250 a month until February 28, 1953, when he was discharged. He has done no work and has received no wages since then. Notice of claim for compensation was filed on June 2, 1954.

The single member found that the claimant's coronary occlusions arose out of and in the course of his employment and that, as a result, the claimant was totally incapacitated for work. The insurer was ordered to pay total incapacity benefits from February 1, 1952, to the date of the decision of the single member and thereafter in accordance with the provisions of the workmen's compensation act. All of the

findings of the single member were affirmed by the reviewing board.

On this appeal of the insurer the issues are (1) whether the injury sustained by the claimant arose out of and in the course of his employment; (2) the sufficiency of notice of injury to the employer; and (3) the effect of the delay in filing a claim for compensation with the board.

As to the first issue it is well settled that, on an appeal, the finding of a reviewing board is to be upheld where the finding is not lacking in evidential support and is not vitiated by error of law. *Berthiaume's Case*, 328 Mass. 186, 189. *Paltsios's Case*, 329 Mass. 526, 528. "The finding stands upon the same footing as the finding of a judge or a verdict of a jury. It is not to be set aside if there is any evidence upon which it can rest." *Pigeon's Case*, 216 Mass. 51, 52.

In the case at bar, there was ample evidence from which the board could find that the employee's heart condition was caused by the extremely heavy work load put upon him by his employer and the strain both physical and mental to which he was subjected. We have said that "we perceive no difference between a stress or strain brought about by physical exertion and that occasioned by distress, worry, fear or anxiety." *McMurray's Case*, 331 Mass. 29, 32. *Egan's Case*, 331 Mass. 11. Here there was evidence of both physical and mental strain.

The employee's medical expert testified that "the schedule of work described was the precipitating cause of this attack." There was also evidence from the medical expert for the insurer that if he had known that the schedule of work was such as described by the employee, he would have recommended that he curtail his activities to some degree. The evidence here is stronger than in the recently decided *LeBlanc's Case, ante*, 265, where the medical evidence was only that the stress and strain of the employee's work "could possibly produce death." In the case at bar the board could have concluded that the employee underwent a strain in connection with his employment which considered

with his heart attacks in July, 1950, constituted a personal injury on October 26, 1951. "Awards of compensation in cases of this sort have frequently been upheld by this court." *Brzozowski's Case*, 328 Mass. 113, 115, and cases cited.

In its brief the insurer appears to rely upon *Ramos's Case*, 330 Mass. 686, to support its contention that the employee's injury was not attributable to his employment. But the insurer entirely misses the point of that case and of the result which is entirely contrary to its contention, for there an award of compensation for death arising out of a coronary condition was upheld.

We next consider the question of the notice of injury and the time of filing the claim for compensation. General Laws (Ter. Ed.) c. 152, § 41, provides that "No proceedings for compensation for an injury shall be maintained unless a notice thereof shall have been given to the insurer or insured as soon as practicable after the happening thereof, and unless the claim for compensation with respect to such injury has been made within six months after its occurrence," with certain immaterial exceptions. By § 44 "Want of notice shall not bar proceedings, if it be shown that the insurer, insured or agent had knowledge of the injury, or if it is found that the insurer was not prejudiced by such want of notice." By § 49 "Failure to make a claim within the time fixed by section forty-one shall not bar proceedings under this chapter if it is found that it was occasioned by mistake or other reasonable cause, or if it is found that the insurer was not prejudiced by the delay."

It is true that no written notice of injury was ever given to the insurer or the insured by the employee and that no claim for compensation was filed with the board until June 2, 1954, a period greatly in excess of six months. This is not, however, fatal to the employee's right to recover, for the single member found that "The employer was aware of each attack suffered by the employee, and the disability resulting therefrom. And, the employee received proper and competent medical care and treatment during each period of illness." This finding was affirmed by the board of re-

view. This is in effect a finding of knowledge of the injury by the insured and that the insurer was not prejudiced.

Whether the insured had knowledge of the injury or whether the insurer was prejudiced by want of notice or by the late filing of the claim was a question of fact for the determination of the board. *Perrotta's Case,* 318 Mass. 737, 739. *Tassone's Case,* 330 Mass. 545, 548. Without repeating the evidence we think it enough to say that there was sufficient evidence to warrant the findings of the single member and that they were not tainted by error of law.

Costs of the appeal under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, are to be determined by the single justice.

*Decree affirmed.*