FRANK CHANNELL's (dependents') CASE.

Essex.   February 3, 1958. — March 5, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Death,
   Notice, Filing of claim. *Death. Proximate Cause.*

Conflicting evidence in a workmen's compensation case warranted findings
   by the Industrial Accident Board that the employee received an injury
   to his head as a result of being struck by the tailgate of a truck in the
   course of his employment as a truck driver, that the blow "was ade-
   quate cause for the development of . . . hematoma," and that his
   death some weeks later was causally related to the injury. [125–126]
The mere fact that after a head injury to an employee during his employ-
   ment his employer's superintendent observed dizziness and other
   symptoms on his part did not warrant a finding that the superintendent
   knew of the injury. [127]
In a workmen's compensation case wherein the Industrial Accident Board
   based an award of dependency compensation to the employee's widow
   on findings that the employee sustained a personal injury while at
   work and that such injury caused his death occurring some weeks
   later, a conclusion that the employer, a self insurer, who first had
   knowledge of the injury three to four months after the employee's
   death, was not prejudiced by want of statutory notice of the injury
   or by a long delay on the part of the widow in filing her claim was
   justified by evidence that the employee received good medical care
   promptly upon stopping work about two weeks after the injury, that
   there were ample medical records and there had been an autopsy,
   and that substantially all witnesses, except the employee himself,
   were available when the employer first learned of the injury, when
   claim was made, and when the board held its hearing thereon. [128]

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the workmen's compensa-
tion act.

The case was heard by *Paquet, J.*

*David M. Watnick,* Assistant City Solicitor, for the city of
Haverhill, insurer.

*Edward C. Uehlein,* for the claimants.

CUTTER, J.   This is an appeal by the city of Haverhill,
self insurer, from a decree of the Superior Court enforcing

a decision of the Industrial Accident Board allowing the claim of the employee's widow for dependency compensation under the provisions of G. L. (Ter. Ed.) c. 152.

The single member found the following facts. In the latter part of June, 1952, the "employee received an injury to his head as a result of being struck by [the] tailgate of [a] truck . . . in the course of his employment." The [e]mployee continued to work, although complaining of dizziness, until July 15, 1952, when . . . his foreman noticed . . . that he was unsteady on his feet and that he was operating his truck with difficulty" and sent him home. The employee saw his family doctor that night. He advised hospitalization. In a few weeks "surgery was performed for subdural hematoma and [the] employee subsequently died." On medical testimony, it was found that the blow received by the employee "was adequate cause for the development of the . . . hematoma . . . and that . . . death was causally related to" the alleged injury. It was also found that the "employee on stopping work . . . obtained adequate medical attention and . . . the superintendent of highways . . . knew of [the] widow's claim through conversation with her and therefore the insurer was not prejudiced by late claim or notice." The superintendent of highways had seen bandaids on the employee's head in the period following the alleged injury. The reviewing board affirmed and adopted the findings of the single member summarized above.

1. Upon the conflicting evidence, the board was warranted in finding that the employee was in fact injured in the course of his employment and that there was causal connection between the alleged injury and his death. The board was not bound to believe evidence, relied upon by the city, tending to show the improbability that the alleged accident could have happened at all or in the manner claimed. The board could have regarded the absence of any reference to the head injury in the hospital records made prior to the employee's death (as opposed to entries made several months later) as merely resulting from incom-

plete inquiry about, or recording of, medical history. It was open to the board (a) to rely upon the opinion evidence of a qualified expert neurosurgeon that as "a general rule" a subdural hematoma develops when "the patient sustains a blow and it may not be a blow that causes loss of consciousness" and that a blow of the type alleged was sufficient to cause such a hematoma, and (b) to regard as inapplicable to the facts of the present case the testimony of the same surgeon and another that a subdural hematoma may be caused by a "rupture from an arteriosclerotic vessel without trauma." See *Luczek's Case*, 335 Mass. 675, 677–678.

2. The evidence indicated that the alleged injury occurred either late in June or early in July, 1952. There was no testimony from fellow employees that they saw the alleged injury or that the employee told them about it. Certain witnesses saw increasing symptoms of the employee's unsteadiness and dizziness from the time of the alleged injury until he was forced to stop work as a truck driver, when sent home from work on July 15. He went on sick leave on July 16. The employee saw his doctor July 15, 1952, and went to the Massachusetts General Hospital medical clinic on July 16, 1952, and thereafter received care at the hospital at intervals until his death on August 16.

It is undisputed that there were conversations about the situation between the employee's wife and his son and the superintendent of highways which took place about three to four months after the employee's death on August 16, 1952. Claim was not filed until March 31, 1954.

The city's claim agent conceded that in April, 1954, when he started investigation of the claim, all the men who worked with the employee and his superintendent and his foreman were available. All, or substantially all of them, were also available at the hearing. There was an autopsy after the employee's death. His family doctor and very complete hospital records were also available.

General Laws (Ter. Ed.) c. 152, § 41, requires that notice of injury be given "as soon as practicable after the happen-

ing thereof" and also that a claim be filed "within six months after death." Section 44 provides that "[w]ant of notice shall not bar proceedings, if it be shown that the insurer . . . had knowledge of the injury, or . . . was not prejudiced by such want of notice." Section 49, as amended by St. 1953, c. 314, § 6, provides that "[f]ailure to make a claim within the time fixed . . . shall not bar proceedings . . . if it is found that it was occasioned by mistake or other reasonable cause, or if it is found that the insurer was not prejudiced by the delay."

There is no evidence that formal notice of injury was given at any time (see *Berthiaume's Case*, 328 Mass. 186, 190) or that delay in filing claim was due to "mistake or other reasonable cause." *Booth's Case*, 289 Mass. 322, 325. Accordingly the claim is barred unless the board was warranted on the evidence in finding (a) that the city either had knowledge of the injury or was not prejudiced by the lack of notice, and also (b) that the city was not prejudiced by the late filing of claim.

The evidence is not sufficient to warrant a finding that the superintendent of highways had knowledge of the injury prior to the employee's death, for there is no evidence that he then knew that there was any suggestion that the employee's dizziness and other symptoms were caused by an injury in the course of employment. *Kangas's Case*, 282 Mass. 155, 157. Compare *Brown's Case*, 334 Mass. 343, 345–346 (where knowledge of the employee's heart attacks and heart condition gave some basis for knowledge that the employment may have aggravated them, which might have amounted to knowledge of the injury). The earliest date as of which, on this record, the city can be said to have had knowledge of the injury, was three to four months after the employee's death when the superintendent talked with the employee's widow.

We need not determine whether knowledge of injury at this late date would have been sufficiently early to excuse, under § 44, the failure to give notice under § 41 "as soon as practicable after" the injury, if, as the claimant contends,

the city was not prejudiced either by the failure to give prompt notice of injury or by the late claim. "The usual forms of prejudice are the inability of the insurer to procure evidence at a time remote from the injury, and the failure of the employee to be treated medically promptly after the injury." *Tassone's Case*, 330 Mass. 545, 548. Here the employee received good medical care promptly upon stopping work. Substantially all witnesses, except the employee himself, were available when the city first learned of the injury, when claim was made, and at the hearing before the board. There had been an autopsy and there were ample medical records. Any prejudice would seem to lie in the possibility that examination of the employee during his life would have shed new light upon the existence and circumstances of the alleged injury. However, the board, on the evidence, could have found that the medical records and autopsy gave to the city all information that a prompt medical examination would have given and that there was no substantial likelihood that a different account of the injury would have been obtained from an employee, apparently regarded by his superiors as truthful, than that contained in his statements to members of his family and friends. The city's contentions that delay in fact has been prejudicial are general in character (see *Rich's Case*, 301 Mass. 545, 549–550) and the board was free to find them unconvincing.

A finding that the city had been prejudiced would have been warranted (*Russell's Case*, 334 Mass. 680, 682–684). Although the evidence of absence of prejudice is not as strong as that in some cases (see *Wnukowski's Case*, 296 Mass. 63, 65–67; *Zabec's Case*, 302 Mass. 465, 467–469; *Watson's Case*, 322 Mass. 581, 584–585; *Charron's Case*, 331 Mass. 519, 521), we cannot say that there was insufficient basis in the evidence for the board's finding that neither failure to give notice nor the late filing of claim was prejudicial to the city. See *Berthiaume's Case*, 328 Mass. 186, 190–191.

3. The decree is affirmed. Costs of the appeal are to be determined by the single justice.                          *So ordered.*