### EARL C. SULHAM'S CASE.

Suffolk. April 7, 1958. — May 15, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Incapacity, Findings by Industrial Accident Board, Notice. *Proximate Cause.*

A finding by the Industrial Accident Board in a workmen's compensation case that decreased earnings by the employee over a certain period were due to economic conditions and not to any disability related to an injury which he had sustained in his work was warranted on the evidence and required dismissal of a claim by him for partial disability compensation. [589]

A finding by the Industrial Accident Board in a workmen's compensation case merely that, if a second disabling hernia suffered by the employee

some time after he had already suffered a compensable hernia was a new injury, he failed to give seasonable notice of the new injury and the insurer was prejudiced thereby was inadequate in that it did not determine whether the second hernia actually was a new injury unrelated to the earlier hernia or on the other hand was really a recurrent hernia causally related to the earlier hernia, in which case a new notice would not be required; and a decree dismissing the claim for compensation for the second disability was reversed and the case ordered recommitted to the board for a determination of that issue. [589-590]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *O'Connell, J.*

*Francis X. Goode,* for the claimant.

*Thomas M. Finucane,* for the insurer.

RONAN, J. This is an appeal from a decree of the Superior Court dismissing the claim of an employee for compensation for partial disability from August 30, 1952, to November 19, 1956, and for total disability for eight weeks from the latter date.

The claimant was employed in a tannery trimming hides when on August 17, 1948, during the course of his work he sustained a "right indirect inguinal hernia" for which he was operated on in December, 1948. He returned to work at the tannery on February 14, 1949, where he was assigned to a job different from his former one but requiring heavy work. He was paid workmen's compensation from December 9, 1948, until February 14, 1949. He continued to work at the tannery until August 30, 1952, when he voluntarily left his employment. Subsequently he was successively employed at two chicken farms but was paid less wages than he had received at the tannery. When the last chicken farm went out of business in April, 1954, he unsuccessfully sought employment at the tannery and stated that his side was not bothering him. After he worked three weeks caring for grounds of a club, he secured employment in a diner and later as a knife polisher at a cutlery factory where he worked until September 28, 1956, when he was laid off because of slack work. He also drove a taxicab

at night from January 1, 1956, to December 31, 1956, for which he received $480.

The origin of a second hernia was very vague but on the claimant's testimony it could be traced to his employment at the tannery. According to his testimony his side began to bother him eight or nine months after the first operation. There was testimony that a lump the size of a walnut had appeared by Christmas time. The lump finally developed into a massive hernia. The claimant consulted three different physicians. One was the physician to the factory who did not appear to be interested in aiding him. The other two advised an operation and diagnosed the claimant's ailment as a recurrent hernia. A fourth physician who examined him on May 28, 1956, diagnosed his ailment as "recurrent right lower quadrant hernia." The hospital operating room reports of both surgeons show the repair of a recurrent right inguinal hernia. He was operated on November 9, 1956, and discharged from the hospital on November 16, 1956. There was testimony that he would be totally disabled for eight or ten weeks and after that should be careful.

The single member found that the employee from August 30, 1952, the time he left his employment at the tannery, to November 19, 1956, was able to earn his average weekly wage, and that the reason for his decreased earnings during this period was the economic conditions and not any disability related to his injury of August 17, 1948. He further found that the employee did not testify with any degree of accuracy as to the circumstances under which the second injury occurred, and that "If [emphasis supplied] the employee did receive a second injury in 1949, 1951, or 1952, he did not seasonably notify his employer or insurer" and the insurer was thereby prejudiced. He denied the claim for compensation for partial disability for the period from August 30, 1952, to November 19, 1956, and for total disability for eight weeks following the latter date. The reviewing board affirmed and adopted the single member's findings and decision.

There was evidence that the employee worked at the tannery until August 30, 1952, when he voluntarily left. He reapplied for employment at the tannery in 1954 stating that he was able to do any work they might give him. He made that request at the tannery when he was thrown out of employment when the second chicken farm had ceased to do business. He received three weeks' employment caring for the premises of a club for which he received $45 a week. He secured employment at a diner and obtained employment at a knife manufactory where because of slack conditions he lost his employment in September, 1956. On the evidence we cannot say as a matter of law that the finding was wrong that the employee was handicapped by the economic situation rather than by his physical condition in the period from August 30, 1952, to the day when he entered the hospital for the second operation. *Durney's Case*, 222 Mass. 461. *Capone's Case*, 239 Mass. 331. *Driscoll's Case*, 243 Mass. 236. *Lavallee's Case*, 277 Mass. 538. *Pierce's Case*, 325 Mass. 649, 655–656. The findings of fact made by the single member and adopted, as here, by the reviewing board are final if they are supported by the evidence and not tainted by some error of law. *Sawyer's Case*, 315 Mass. 75. *Hartman's Case*, 336 Mass. 508, 511, and cases cited.

It was the duty of the board to ascertain the relationship of the second hernia to the first one. That was one of the principal issues. If the second had no causal connection with the first and did not arise out of or during the course of employment at the tannery, then of course there would be no liability. *Franklin's Case*, 333 Mass. 236. *Sarkes's Case*, 336 Mass. 736. If it resulted from a new independent cause different from the first hernia but from employment at the tannery, the claimant in order to prevail would have to show that he gave reasonable notice of the injury and that he filed a claim within six months (see *Bloom's Case*, 222 Mass. 434, 435) or prove that the insurer suffered no prejudice because of a failure to give notice or make a claim or that there was no lack of knowledge on the part of

the insurer or the insured. G. L. c. 152, §§ 41, 44, 49. *Berthiaume's Case*, 328 Mass. 186. *Tassone's Case*, 330 Mass. 545. *Charron's Case*, 331 Mass. 519. *Brown's Case*, 334 Mass. 343. *Russell's Case*, 334 Mass. 680. *Channell's Case*, *ante*, 124. One of the principal reasons for denying compensation in the instant case was the failure to give notice and to file a claim. *Kangas's Case*, 282 Mass. 155. *Hatch's Case*, 290 Mass. 259. *Russell's Case*, 334 Mass. 680.

If the second disability resulted from a mere breaking down of the repair job on the first hernia so that the second one was really a recurrent hernia — of which there was more than sufficient evidence — and if the claimant was found not to be entitled to partial disability compensation from August 30, 1952, to November 19, 1956, because his loss of wages was due not to his physical condition but to the economic situation, then there remains the question whether he is entitled to total disability compensation for eight weeks following the second operation.

The board should have found as a fact whether the claimant at the time of the second operation was suffering solely from a recurrent hernia without any new injury bearing a causal relationship to the hernia, or from a hernia to which an injury, subsequent to that which caused the 1948 operation, bore a causal relationship. If it was the former, there was no obligation upon the claimant to give a new notice or to file a new claim. *Gilson's Case*, 254 Mass. 460. *Paglieranis's Case*, 270 Mass. 368. *Rock's Case*, 323 Mass. 428. 165 A. L. R. 9, 43.

The decree of the Superior Court is reversed and the case is to be recommitted to the board to determine whether the second hernia resulted from the first injury and, if so, to order total disability compensation on account of the second operation.

*So ordered.*