JAMES A. GARRIGAN'S CASE.

Suffolk.    October 5, 1960. — November 14, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Workmen's Compensation Act,* Incapacity, Notice, Filing of claim, Find-
ings by Industrial Accident Board, Recommittal to Industrial Accident
Board.

The record in a workmen's compensation case supported a conclusion by
the Industrial Accident Board that a sales manager who suffered an
injury through a heart attack due to his work and shortly afterwards
resumed his work and continued to work at full salary, but with some
restriction of the nature and extent of his activities, for nearly four
years, when he was laid off, was partially incapacitated thereafter as
a result of the injury.   [414–417]
A finding by the Industrial Accident Board in a workmen's compensation
case, that there was within G. L. c. 152, § 49, reasonable cause for
delay in filing a claim for partial incapacity until about four years
after the employee had suffered at work an injury through a heart
attack which he contended was the cause of such incapacity, was war-
ranted where it appeared that he had resumed his work soon after the
injury and had continued to work and had been paid full salary until
he was laid off shortly before the filing of the claim.   [417–418]
In a workmen's compensation case involving a claim for partial incapacity
for a period nearly four years after the employee had suffered at work
an injury through a heart attack which he contended was the cause of
such incapacity and of which he never gave statutory notice, the sub-
sidiary findings by the Industrial Accident Board on the issues whether,
within G. L. c. 152, § 44, the employer or insurer had knowledge of a
work connected heart attack as distinguished from general knowledge
of heart trouble on the employee's part, and whether, although he had
prompt and adequate medical care, the insurer was prejudiced by the
want of notice, were inadequate to enable this court to determine the
propriety of conclusions of the board in favor of the employee on those
issues, and the case was ordered recommitted to the board for ampli-
fication of its findings.   [418–420]

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the workmen's compensa-
tion act.

The case was heard by *Forte,* J.

*Thomas P. Gill,* (*John J. Donovan* with him,) for the claimant.

*Timothy H. Donohue,* for the insurer.

CUTTER, J.   The employee has appealed from a decree of the Superior Court dismissing the employee's claim for workmen's compensation based upon an alleged injury on March 11 and 12, 1954. ˙ A single member had denied the claim.   The reviewing board found (a) that work done on March 11 and 12, 1954, aggravated an "underlying preëxistent coronary artery heart disease . . . to the point where the employee suffered a myocardial infarction" and also (b) "that the employee was partially incapacitated from February 1 . . . to . . . 15, 1958, the period for which he claimed compensation."   The board awarded compensation for this period.

1.   No contention appears now to be made that the evidence did not warrant the conclusion that the employee suffered a heart infarction arising out of his employment. The initial question for our decision is whether the trial judge properly dismissed the claim on the ground that the "employee was not incapacitated from employment . . . from" February 1 to 15, 1958, as a result of an injury on March 11 and 12, 1954.

The relevant evidence is as follows.   The employee in 1954 was employed as a sales manager at a bottling company.   "His job consisted primarily of hiring and training personnel and handling 'tough problems and calls.'   He had very little, if any, physical work associated with his job." It could have been found, however, that prior to March, 1954, he engaged in some physical effort in connection with selling campaigns and that on various occasions he rode trucks with his salesmen and worked from 8.30 A.M to 9 P.M.

On March 11 and 12, 1954, he suffered chest pains, while on a selling campaign in a Fitchburg store.   This campaign involved loading a heavy movable cooler with cases of coca cola and helping to push it around the store.   On March 13, a doctor was obtained.   He sent the employee to a hospital where he remained until April 1.   Thereafter, following a

gradual increase in his activity, he "returned to work as a sales manager on a restricted basis." With the permission of the manager he worked "from 7:30 A.M. until 5 P.M., but took two and one half hours off for lunch . . . . [H]e delegated some . . . authority . . . but was able [as the only sales manager] to handle the hiring and training of salesmen as well as conducting sales meetings." He was not "on the road every day" and "never went on any extended trips." He only covered the local area. He "continued at this level until December . . . 1957, when the plant was sold and he was laid off," without any suggestion that it was because of his "extra long dinner hours or inability to do the work." He was paid full salary from the time of his hospitalization through January 31, 1958.[1] Since March, 1954, "he has had frequent episodes of . . . chest pain precipitated by" exertion or excitement. "These . . . are quickly relieved by resting and nitroglycerin."

The reviewing board's conclusion that the employee "was partially incapacitated" from February 1 to 15, 1958, the only period here in issue, was based principally on the testimony of two doctors. One, called as a witness by the employee, first saw him on May 25, 1956, and has treated him since then. In 1956, this doctor told the employee that he could do light, sedentary work but that he should keep his activity below that which precipitated anginal pain. Cardiograms taken by this doctor, the last on March 6, 1958, showed that "nature had remedied as best she could, the damage" of March, 1954. On the basis of his conclusion that the employee in 1958 had a "healed infarction," this doctor agreed, on cross-examination, that the work done by the employee from 1954 to 1958 "did not affect him physically" and that he could continue this "type of work without any ill effects on his heart" if pain was not pre-

[1] This, the employee testified, was "for doing less work" and "in appreciation of past services." He received unemployment benefits from February 15, 1958, to the date of the hearing before the single member. The employee, of course, does not now seek compensation for partial incapacity for any period during which he received his full preinjury pay (see *Shaw's Case*, 247 Mass. 157, 161) or during which he received unemployment benefits. See *Pierce's Case*, 325 Mass. 649, 654–659. See also *Gallant's Case*, 329 Mass. 607, 609.

cipitated. This witness also agreed that, "as far as his heart was concerned," the employee was "in better shape . . . in March, 1958, than . . . at the time of . . . cardiograms in March, 1954."

A "report of impartial examination" by Dr. Sagall indicated that, apart from anginal attacks daily, "recovery from the . . . infarction . . . has been uncomplicated" and that the employee had been "able to work uninterruptedly following" his initial absence until December, 1957. Dr. Sagall expressed the opinion that the employee's "condition represents a permanent partial disability in that his . . . duties must be such as to avoid moderately heavy to heavy physical exertion or exposure to inclement weather."

General Laws c. 152, § 35, as amended through St. 1949, c. 520, § 3 (in force on March 12, 1954),[2] reads in part, "While the incapacity for work resulting from the injury is partial, the insurer shall pay the . . . employee a weekly compensation equal to the entire difference between his average weekly wage before the injury and the average weekly wage he is able to earn thereafter, but not more than" stated maxima, not now relevant. A finding by the board that an employee was partially incapacitated by an injury and that his ability to earn was lessened must stand if not tainted by error of law and if supported by the evidence. *Hurwitz's Case*, 280 Mass. 477, 479, 481. *Biscardi's Case*, 284 Mass. 14, 19–20. *Royal's Case*, 286 Mass. 374, 376–377. See also *Amello's Case*, 320 Mass. 347, 348; *Sabulis's Case*, 334 Mass. 709, 710. Cf. *Zeigale's Case*, 325 Mass. 128, 129–130; *Mastrogiovanni's Case*, 332 Mass. 228; *Sulham's Case*, 337 Mass. 586, 589. Compensation for partial incapacity may be awarded where the employee is unable to continue his usual work but can perform other labor of a less remunerative kind. *McKeon's Case*, 326 Mass. 202, 205–206. Where, however, the injury does not impair

---

[2] For later amendments of § 35, not here applicable, see St. 1955, c. 777, § 3; St. 1958, c. 665, § 3; and St. 1959, c. 566, § 3. See also G. L. c. 152, § 2A, inserted by St. 1946, c. 386, § 3. Cf. *Goddu's Case*, 323 Mass. 397, 399.

the employee's ability to pursue his former occupation, different considerations may be applicable. See *Driscoll's Case,* 243 Mass. 236, 239–240. An award, however, is not necessarily prevented by the fact that the employee has received the same wages after he returned to work as he had received before he was injured. See *Carmossino's Case,* 268 Mass. 35, 38; *Percival's Case,* 268 Mass. 50, 53–55; *Hurwitz's Case,* 280 Mass. 477, 480, 481–482, and cases cited. Cf. *Sulham's Case,* 337 Mass. 586, 588, 589. In circumstances such as are here present, it is enough if the injury rendered the employee less efficient in his former employment (see *Whitehead's Case,* 312 Mass. 611, 612–613; *Bajdek's Case,* 321 Mass. 325, 328–329, and cases cited) or diminished his earning capacity in some other employment, at least if resort to other types of employment should prove to be necessary because of lack of opportunity in his usual line of work. See *Federico's Case,* 283 Mass. 430, 432. We cannot say that the reviewing board's conclusion that, during the period February 1 to 15, 1958, the employee's earning capacity was reduced from $107 to $85 per week was not warranted by its subsidiary findings (a) that, prior to his heart attack, the employee rode trucks with salesmen, whereas thereafter he was not permitted to do so, and (b) that he had to go on a reduced work schedule after the attack, taken together with the medical testimony.

2. The board found that the employee never gave a formal notice and did not file a claim until March, 1958. The insurer contends that these facts bar compensation.

The reviewing board found "that the employee had reasonable cause in failing to file a claim within six months of the injury and failing to give notice." General Laws c. 152, § 49 (as amended through St. 1953, c. 314, § 6), provides that "[f]ailure to make a claim [seasonably] . . . shall not bar proceedings . . . if it is found that it was occasioned by mistake or other reasonable cause, *or* if it is found that the insurer was not prejudiced by the delay" (emphasis supplied). See *Zabec's Case,* 302 Mass. 465, 469; *Perrotta's Case,* 318 Mass. 737, 739. The board had

support in the evidence for its finding that the employee was paid his full wages until January 31, 1958. Consequently, it could conclude, without error of law, that there was reasonable cause for the delay in filing the claim, and that the employee is not barred from compensation by that delay. See *Moore's Case,* 249 Mass. 173, 176. See also *Fennell's Case,* 289 Mass. 89, 92–93.

Under § 44, absence of the statutory notice (see §§ 41, 42, and 43) is excused "if it be shown that the insurer, insured or agent had knowledge of the injury, or if it is found that the insurer was not prejudiced by such want of notice." The board found that "[t]he . . . general manager of the insured visited the employee in the hospital at least fifteen . . . times and had the background of when the attacks came on the employee." The employee, however, admitted that he never told the general manager on his visits to the hospital that his "pains started while working . . . in Fitchburg," nor did he "recall whether on any occasion, during those three and a half years he worked" for the employer, he told the general manager or the office manager "that he had this heart attack while working." Although at the time he told a man who was with him in Fitchburg of the pains, this man was a subordinate of the employee. He did not recall asking to have a report of the incident filed, although he knew accidents which occurred while working were to be reported to the office manager. The general manager and the office manager each denied receiving any report that the heart attack occurred while the employee was at work. The employee also permitted application to be made in his behalf for payments under the company's health plan dealing with injuries not work connected. See, however, *Clifford's Case,* 337 Mass. 129, 131. This conceivably might have misled the employer into regarding the heart attacks as in no way related to the work. We are left in doubt by the evidence just summarized as to the evidential basis for any conclusion that the employer, through any agent senior to the employee himself, had knowledge of an injury at work. Although the general manager and the

office manager had general knowledge that the employee was suffering from heart attacks, our attention has not been directed by appropriate subsidiary findings to evidence of events or conversations putting the employer on notice that any incidents at or connected with work had occurred which might constitute or lead to a compensable injury. See *Kangas's Case,* 282 Mass. 155, 157–158, 159–160. Cf. *Anderson's Case,* 288 Mass. 96, 100, 101–102; *Wheaton's Case,* 310 Mass. 504, 506–507. Cf. also *Crowley's Case,* 287 Mass. 367, 370–372; *Brown's Case,* 334 Mass. 343, 347–348; *Davidson's Case,* 338 Mass. 228, 231.

On the issue of prejudice, the board found that the employee had prompt and competent medical care. There are, however, forms of prejudice other than the possibility that the employee will not receive prompt and proper medical care. See *Russell's Case,* 334 Mass. 680, 683; *Channell's Case,* 337 Mass. 124, 128. A heart case of this type is one about which it is particularly important to an insurer to make prompt and thorough investigation, while events are fresh in the minds of witnesses and while informative medical tests close to the time of the alleged injury can be undertaken. It might also have been advantageous for the insurer to investigate the effect of the alleged injury upon the employee's ability to perform the duties of a sales manager while he was still doing so rather than after a change of management and after he had been discharged. There was no testimony from doctors who saw the employee earlier than May 25, 1956, more than two years after the heart attack. It does not appear whether the doctor who treated the employee in 1954 was available after claim was filed in 1958.[3]

The evidence in the present case is less confused than in *Herson's Case, ante,* 402, 407, and the subsidiary findings are somewhat less incomplete. Nevertheless, they do

---

[3] It should be noted, however, that the 1954 hospital records were available and that each of the three doctors from whom testimony or a report appears in the record, probably saw, or could have seen, electrocardiograms taken in 1954 at the hospital.

not furnish a satisfactory basis for ascertaining whether the board (a) applied correct principles of law in reaching its conclusions that the employer had knowledge of an "injury" and that the insurer was not prejudiced, and (b) had support in the evidence for those conclusions. The same considerations mentioned in *Herson's Case* cause us to direct that this case be remanded to the board for further subsidiary findings, which should disclose the evidence believed and relied upon by the board and any inferences therefrom which it made.

3.  The final decree is reversed. The case is to be remanded to the board for appropriate subsidiary findings relating to the issue of notice, the employer's knowledge of injury, and prejudice, and for such further proceedings, which may include the taking of additional testimony, as may be consistent with this opinion.

*So ordered.*