PEARL LENDALL'S CASE.

Essex.    April 4, 1961. — May 10, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

*Workmen's Compensation Act*, Notice, Filing of claim, Findings by In-
dustrial Accident Board, Recommittal to Industrial Accident Board.

Evidence in a workmen's compensation case warranted a finding that
within G. L. c. 152, § 44, the employer, a householder, had knowledge of
an injury sustained by the employee, a domestic servant, in a fall while
she was hanging draperies.    [646]

In a workmen's compensation case involving a domestic employee who
injured her back and legs in a fall while hanging draperies, findings by
the Industrial Accident Board that under G. L. c. 152, § 49, the em-
ployee had reasonable cause for not filing the claim until more than
four and one-half years after the injury and that the insurer was not
prejudiced by the delay were not supported by the subsidiary findings of
the board, but on the evidence a decree of the Superior Court dismissing
the claim should be reversed and the case ordered recommitted to the
board for further findings.    [646–648]

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the workmen's compensa-
tion act.

The case was heard by *Thompson, J.*

*Hyman Marcus*, for the claimant.

*Garfield R. Morgan*, for the insurer.

WHITTEMORE, J.    The employee's claim for incapacity
from an injury sustained October 17, 1953, was filed on
May 8, 1958.    The reviewing board, adopting in part and
modifying in part the decision of the single member, and
awarding compensation, found inter alia: the employee in-
jured her back by a fall from a chair while hanging drap-
eries in the insured's house where she was employed to do
general housework and this was the precipitating cause
of the 1958 incapacity; the insured had contemporaneous
knowledge of the accident; there was reasonable cause for

delay in filing the claim; the insurer was not prejudiced by delay in the filing.

The decree in the Superior Court ordered the claim dismissed on the ground that the employee had failed to sustain the burden of proving that the delay in filing claim was occasioned by mistake or other reasonable cause or that the insurer was not prejudiced.

The employee had testified that she fell on a Thursday; the chair went out from under her as she was trying to reach over the air conditioner in the window. "[S]he struck her back over the chair," she was black and blue in both legs and "all the way around." She told her employer (Mrs. Clara C. Miller) about it, and that she "broke about fifty veins in her leg." The employer sent her to Dr. Collins. She telephoned Dr. Collins on Saturday, and he put her in the Beverly Hospital on Sunday and she was there seven days. She had had phlebitis "a long time ago," and so told the physician. When she went into the hospital she had a pain in her upper back and legs, mostly the left leg. When she got home she had pain in her legs and back, "has never been without that pain"; she did lighter work after the injury. She did not at first ascribe the pain to the fall. She had asked her employer, the insured, "to do something about insurance." Thereafter she had a talk with one Tapley and signed a form of some sort and was told it was an insurance form. The words "United States" were written on the form at the top of the sheet. "I asked . . . [Mrs. Miller] what the name was and she said it was the insurer." The employee heard from no one thereafter. She had a talk with Mrs. Miller who said she could not collect so "she went back to work." She believed Mrs. Miller so "did not try" to collect. She was miserable and had medical treatment by a Dr. Box. She did not keep track of the number of times she saw Dr. Box. She owed the employer $1,000. The employer had told her she would be remembered in her will and the note cancelled. The employer died in 1955 or 1956. The employee was not mentioned in the will. She had brought

suit against the estate for services. She went to work for a Mrs. Gabinsky in 1956 or 1957. Her back bothered her. She saw Dr. Box. She was able to work only a few months. The only actual witness of the fall was "Vickie," the maid, whose last name and present whereabouts were unknown to the employee. Mr. Miller had predeceased his wife by about three years.

After leaving Mrs. Gabinsky, the employee went to Dr. Samuel Levine. He testified that when he first saw the employee on March 29, 1958, she gave a history of the fall on October 17, 1953. He discovered a ruptured disc. If there was no intervening injury "the complaints and physical findings . . . [of March 29, 1958] . . . were directly, continuously, traceable to or caused by the injury of October 17, 1953." If she did sustain an injury to the disc "she has about held her own, [for] if it had worsened very much . . . surgery would have to be done." He could not say she did not have competent treatment. "Supportive care" was indicated for a ruptured disc. He could not say if she was wearing a supportive garment when she came to him. He prescribed one. The severe symptoms of a ruptured disc may not have appeared for some time after the injury.

Dr. Leonard F. Fox testified that he saw the employee at his office once, sometime in 1953, and in that year on one occasion in the hospital. She told him of the fall. On examination he found a "contusion and ecchymosis over legs . . . both thighs." In January, 1958, she was in a room in the Beverly Hospital where he had a patient; he did not treat her then. "She had tried resting on bed boards and . . . got an orthopedic mattress"—neither helped much. He thought she had a chronic sacroiliac strain. He thought there was probably a continuity of symptoms from 1953. He had no way of telling whether she would have been better off in 1958 if she had been treated with supportive measures and heat in the intervening period.

Dr. John J. Crowley examined the employee for the insurer May 27, 1958. He found a one half inch shortening

of the right leg.   This could predispose to a ruptured disc.
He testified that the employee when examined said that her
"left leg was dead" about a month after the accident when
she tried to get out of bed; she went to Dr. Box because
Dr. Collins was away and was advised to use a bed board
and get a support for her back; off and on she had been
treated by Dr. Collins or Dr. Box as needed, and she had
ordered a bed board and "posture-pedic" mattress; she
had gone to Dr. Box and Dr. Collins during the past four
and one half years when she could not get along; she was
told "she probably would have to wear the garment to bed
if she had a lot of trouble."   Dr. Crowley also testified that
it "was good medical advice" to sleep on boards and get a
postural mattress and take it easy and rest.

Dr. William J. Collins testified that he saw the employee
at the Beverly Hospital October 25, 1953.   She stated she
fell from a chair one week prior to admission and injured
her right lower leg.   She did not complain of anything else.
She complained of severe pain in "right upper quadrant."
She did not link the fall and the pain at first, but later did
so.   The discharge diagnosis was "Contusions, upper ab-
domen and back, right."   The Blue Cross paid for the
treatment and Mrs. Miller for the office visits.   The em-
ployee could have had a ruptured disc "just in the findings
at the hospital."   He thinks he did not examine her back.

Helen Cook, Mrs. Miller's stepdaughter, testified that in
October, 1953, Mrs. Miller told her that the employee
(Pearl) would not be in as she had fallen from a chair
while hanging "drapes."   Pearl did not do as heavy work
thereafter "because of her back."

There was evidence that an attorney for the employee
wrote the insurer November 1, 1957, that Pearl Lendall was
injured while in the employ of the late Clara C. Miller in
October, 1953, and that he had been informed the addressee
had covered the employees with workmen's compensation
insurance.   "Will you please investigate . . . and commu-
nicate with me . . . ."

The single member had found that the insurer was not

prejudiced because "they received full information of said injury in 1953." The reviewing board in effect deleted this finding. It noted that counsel had argued against the finding, and observed "We do not know who are meant by 'they' received full information etc." "In lieu of the member's finding of want of prejudice in respect of the issues [of] 'notice and claim,'" the board found in substance as follows: (1) On the question of notice, the insured had contemporaneous knowledge; the employee was treated by a physician who was paid by the insured; the physician saw her at the Beverly Hospital in October, 1953. The employee then described the fall, complained only of her leg. "[T]he discharge diagnosis was 'contusions, upper abdomen and back, right . . .'"; the employee went to the physician "to obtain necessary and adequate treatment for her injury." (2) On the question of the claim, "the employee had reasonable cause for delay in filing her claim and . . . the insurer was not prejudiced in respect thereof, for the same reasons that we have related in respect of 'notice,' and the further reasons that the employee filed claim within due time after having been examined . . . on March 29, 1958, and being advised . . . of the trouble in her back . . . ."

General Laws c. 152, § 44, provides that "[w]ant of notice shall not bar proceedings, if it be shown that the insurer, insured or agent had knowledge . . . ." The board's finding that the insured had knowledge of the accident is supported by evidence. *Chapman's Case,* 321 Mass. 705, 707. *Herson's Case,* 341 Mass. 402, 406.

The employee's burden with respect to the late filing of the claim is governed by G. L. c. 152, § 49, which excuses delay "occasioned by mistake or other reasonable cause, or if it is found that the insurer was not prejudiced by the delay." The conclusions of the board on these issues are not supported by adequate findings.

The facts referred to by the board as the basis of its conclusion that there was reasonable cause for delay are inadequate in law to support the conclusion. On this issue

the board should have made specific findings in respect of
the evidence tending to show, if believed, that the employee
had signed a paper addressed to an insurer and had cause
to think that as a result an insurer had investigated the
injury and denied liability, and that the employee relied on
the employer's statement that no recovery could be had.
The deletion of the single member's finding of notice to
the insurer does not deprive the testimony in respect of
Tapley and a supposed insurer of all relevance on the issue
of mistake or reasonable cause.    Findings on this issue are
also required in respect of the evidence tending to show
that there was reliance by the employee on an expectation
to be remembered in the will and an election to forego any
rights to compensation in favor of the expectation.    It was
error, however, for the judge to rule that on no aspect of
the evidence could mistake or reasonable cause be found.
Compare *McLean's Case,* 223 Mass. 342; *Fells's Case,* 226
Mass. 380; *Barry's Case,* 240 Mass. 409.

Similarly the facts referred to by the board do not fur-
nish legal support for the finding of want of prejudice.
In the following cases which have ruled that lack of preju-
dice had not been shown both seasonable notice and season-
able claim were absent.    *Kangas's Case,* 282 Mass. 155.
*Booth's Case,* 289 Mass. 322.    *Hatch's Case,* 290 Mass. 259.
*Russell's Case,* 334 Mass. 680.    But it does not follow that,
because the employee has shown that the employer had
notice, the employee has necessarily sustained the burden
of showing that the insurer was not prejudiced.

The evidence tended to show that the employee's injury
in 1953 arose "out of and in the course of . . . [the] em-
ployment."    G. L. c. 152, § 26.    Nevertheless the conclu-
sion should not be left to inference and a finding should
be made whether the insurer was not prejudiced by lack of
opportunity to investigate the applicability of the Work-
men's Compensation Act.    There is a substantial possibil-
ity of prejudice to the insurer through lack of any notice
in fact, and consequent inability to make any investigation
either of the nature and extent of the injury or of possible

intervening injury to account for the 1958 incapacity, as well as through loss of the opportunity to supply adequate medical care. See *Russell's Case,* 334 Mass. 680.

There is no medical testimony of treatment from 1953 to 1958. Giving full weight to the testimony favorable to the employee, soon after the fall she was told to get a board, a mattress, and a "garment." This leaves most of the four and one half years unaccounted for except by the implication of her testimony of consulting Dr. Box on occasion. The hearsay report in Dr. Crowley's testimony that when the employee felt that she needed to do so she went to Dr. Collins or Dr. Box is not evidence of the fact. Dr. Collins testified to services only in the period shortly after the injury. Dr. Box was not called nor his absence accounted for. Findings are reasonably required on the issues of whether the insurer had knowledge in fact, and what medical attention the employee received in the four and one half year interval and its probable or possible effect on the incapacity in 1958. In the circumstances we do not rule on the sufficiency of the evidence in respect of prejudice.

The decree is reversed. The case is to be remanded to the board for further findings. *Herson's Case,* 341 Mass. 402. *Garrigan's Case,* 341 Mass. 413. *Thibeault's Case,* 341 Mass. 647.

*So ordered.*