ROQUE PENA'S CASE.

Suffolk.    April 19, 1977. — June 24, 1977.

Present: KEVILLE, ARMSTRONG, & BROWN, JJ.

*Workmen's Compensation Act,* What insurer liable, Notice, Finding by Industrial Accident Board.

In a workmen's compensation case, where there was ample expert opinion testimony to warrant a finding that an employee's previous back injury was aggravated by work at his later place of employment,

there was no error in holding the later employer's insurer liable for the entire compensation. [454]

In a workmen's compensation case, there was no merit in the insurer's argument that the record was insufficient to establish a causal relationship between the employee's· disability and his employment. [454]

Where the Industrial Accident Board failed to make specific findings to support its conclusion that an insurer was not prejudiced by an employee's failure to give the insurer prompt notice of his claim, the case was remanded to the board for further findings. [455-457]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Hayer, J.*

The case was submitted on briefs.

*Paul F. X. Powers* for Hartford Accident & Indemnity Co.

*Thomas A. L'Esperance, Jr.,* for Liberty Mutual Insurance Company.

*Steven Babitsky & Marcel S. Kisten* for the employee.

BROWN, J. This is an appeal by Hartford Accident & Indemnity Co. (the insurer) from a judgment of the Superior Court awarding workmen's compensation to the employee. This action was originally heard by a single member who made findings favorable to the employee. The reviewing board issued its decision affirming, adopting, and supplementing the findings of the single member. On appeal a Superior Court judge recommitted the case to the board for several purposes, including the one that the board "make specific findings of subsidiary fact with respect to the issue of prejudice to the insurer by the delay in notice and late filing of claim." The board recommitted the case to the single member, who issued a second decision favorable to the employee. The reviewing board affirmed that decision and ordered the insurers to pay the employee compensation. A judgment was entered in the Superior Court affirming the board's decision. The insurer appeals from that judgment.

As part of his original decision the single member made the following findings of fact. The employee was employed

at the Murray Brothers Tanning Co., Inc. (Murray Brothers), from August, 1969, to January 17, 1970. In November, 1969, while working for Murray Brothers, the employee pulled a large piece of leather weighing about twenty-five pounds from a box; he slipped and fell backwards against a box, hitting himself at the waistline. Although in great pain, he finished out the day. The next day he stayed in bed. He then consulted a doctor. He remained out of work for two weeks because he had pain in his back and left leg. When Murray Brothers closed on January 17, 1970, he received unemployment compensation for three weeks.

The employee began working for the Sutherland Foundry, Inc. (Sutherland), on April 5, 1970. His work at Sutherland consisted principally of shoveling sand with a shorthandled shovel for periods of up to eight hours a day. A shovel full of sand weighed up to ten pounds. The employee worked at Sutherland for about two months and was then given a vacation of one week. He could not return to work because of his back pain. In September, 1971, he underwent a laminectomy, but the surgery did not help him. He still has pain in his back and leg and is unable to work.

The employee's doctor, Ronald F. Kaplan, testified, and the single member found, that the employee sustained an injury on November 2, 1969, while working for Murray Brothers. The injury was aggravated by the employee's work at Sutherland, causing the employee to be totally disabled from June 23, 1970. Dr. Kaplan stated in his report of November 15, 1972, and the single member found, that the employee still had a nerve root irritation. The employee had "reached an end result." The employee had a forty percent loss of function in his back and a thirty percent loss of function in both extremities.

At the original hearing the single member stated that the employee failed to give timely notice of his later injury to Sutherland, but that the insurer was not prejudiced by this nor by the employee's failure to file a timely claim. Although the single member made no finding as to the exact date the employee gave notice of that injury and filed his

claim, Sutherland's foreman testified that he first learned of the injury when the insurer telephoned him on April 12, 1972, to verify the fact that the employee had worked at Sutherland. Following the recommittal of the case to the single member by the Superior Court and reviewing board, the single member supplemented his findings on this issue as follows. He found that within two or three weeks after stopping work at Sutherland the employee consulted Dr. Ralph Lepore. Shortly thereafter he was referred to Dr. George M. Hazel and Dr. Peter H. Dillard. He later underwent back surgery. The single member added that the insurer had available to it many medical reports which it could use to defend its position. The single member also found that the president and the foreman of Sutherland had either full knowledge or an opportunity to know of the conditions under which the employee worked.

1. The board's decision as to whether the employee's injury was causally related to his work at Sutherland must be sustained "unless ... wholly lacking in evidential support or tainted by error of law ...." *Hachadourian's Case,* 340 Mass. 81, 85 (1959). There was ample expert opinion testimony to warrant the finding that the employee's previous back injury was aggravated by work at Sutherland, his last place of employment. Compare *Trombetta's Case,* 1 Mass. App. Ct. 102 (1973). Therefore, no error was committed in holding Sutherland's insurer liable under the rule that "the insurer covering the risk at the time of the most recent injury bearing a causal relation to the disability must pay the entire compensation." *Trombetta's Case, supra,* at 104, citing *Evan's Case,* 299 Mass. 435, 438 (1938).

2. The insurer's argument that the record is insufficient to establish a causal relationship between the employee's loss of bodily function and disfigurement, found compensable by the board under G. L. c. 152, § 36, as appearing in St. 1972, c. 741, § 1, and his employment with Sutherland is also without merit.

3. The insurer argues that the evidence is not sufficient to support the board's conclusion that the employee was

disabled during the period between June 23, 1970, and January 31, 1971. The board's conclusion is adequately supported by the testimony of the employee and the employee's doctor, Ronald F. Kaplan.

4. The insurer's principal argument is that the employee has failed to sustain his burden of proving under G. L. c. 152, §§ 44 and 49, that the insurer was not prejudiced by the employee's failure to give it or the employer timely notice of his injury or of his claim for compensation. See and compare *Kangas's Case*, 282 Mass. 155, 158-159 (1933); *Russell's Case*, 334 Mass. 680, 682-684 (1956). The insurer can be prejudiced by the employee's failure to receive prompt medical care which causes his condition to deteriorate. See *Robinson's Case*, 354 Mass. 282, 284 (1968). See also Locke, Workmen's Compensation § 451 (1968). The single member's finding that the employee consulted with several doctors "within two or three weeks after stopping work at the Sutherland Foundry" indicates that we are not presented with this kind of prejudice in the instant case. Compare *Channell's Case*, 337 Mass. 124, 128 (1958); *Mahoney's Case*, 337 Mass. 629, 632 (1958); *Davidson's Case*, 338 Mass. 228, 231-232 (1958), and cases cited.

The absence of prompt medical treatment, however, is not the only possible type of prejudice. *Curtin's Case*, 354 Mass. 45, 47 (1968). The insurer is prejudiced if it was unable to conduct a thorough investigation and procure evidence on the question whether "there was a causal connection between the employment and the injury." *Zabec's Case*, 302 Mass. 465, 467 (1939). See *Robinson's Case*, *supra*. Compare *Hatch's Case*, 290 Mass. 259, 262-263 (1935).

This type of prejudice most frequently arises when the employee's injury is caused by a single incident. E.g., *Kangas's Case*, 282 Mass. 155 (1933); *Hatch's Case*, 290 Mass. 259 (1935). In such circumstances "the rights of the insurer might be impaired if it were kept in ignorance of [the] occurrence and so prevented from conducting an investigation to determine whether such an event had in fact taken place and, if it had, to ascertain all the attending

circumstances, including an inquiry as to whether there was a causal connection between the employment and the injury and between the injury and the disability." *Zabec's Case,* 302 Mass. at 467. As the employee's aggravation of his previous back injury took place over a period of several weeks, and the employee's foreman was available and did testify as to the nature of the defendant's employment during that period, the insurer cannot effectively argue that it was prejudiced by its inability to offer evidence on the work conditions which the employee claims caused his disability.

On the other hand, many of the cases holding that the insurer was not prejudiced by the employee's failure to give it timely notice involve employees whose disability had been caused by an occupational disease. E.g., *Watson's Case,* 322 Mass. 581, 584 (1948); *Tassone's Case,* 330 Mass. 545, 548 (1953); *Charron's Case,* 331 Mass. 519, 521 (1954). In those cases the causal link between the employment and the disability was fairly obvious. Such is not the case when, as in the instant case, a back injury is the cause of the disability.

In the final analysis, the question whether the employee's failure promptly to inform the insurer of his claim may have prevented the insurer from being able to procure needed evidence is a factual question for the board. *Therrien's Case,* 2 Mass. App. Ct. 795 (1974). However, in the instant case the board's findings, particularly as to the availability of medical records (see *Wheaton's Case,* 310 Mass. 504, 507 [1941]), are conclusory and not supported by adequate subsidiary findings. *Garrigan's Case,* 341 Mass. 413, 419 (1960). *Thibeault's Case,* 341 Mass. 647, 652 (1961). *Lendall's Case,* 342 Mass. 642, 648 (1961). The single member found that the employee consulted with at least three doctors within a few weeks after stopping work at Sutherland, but none of the medical reports of these doctors was introduced in evidence by the employee. The earliest medical record introduced in evidence was the report of the hospital in which the employee had had his op-

eration. That report was prepared[1] over seven months after the time during which the single member found that the aggravation of the employee's back condition ·took place.

It is our conclusion that the single member failed to give adequate consideration to the instructions of the first Superior Court judge that the board make more "specific findings of subsidiary fact with respect to the issue of prejudice." See *Zabec's Case*, 302 Mass. at 469, and cases cited. Accordingly, the judgment is reversed, and the case is to be remanded to the board for further findings on the issue of possible prejudice arising from the employee's failure to give the insurer prompt notice of his claim. See *Berthiaume's Case*, 328 Mass. 186, 191 (1951).

*So ordered.*

---

[1] The employee was admitted to Choate Memorial Hospital on January 31, 1971.