### BLANCHE THIBEAULT'S CASE.

Suffolk. December 9, 1960. — January 9, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Workmen's Compensation Act,* Notice, Filing of claim, Findings by Industrial Accident Board, Recommittal to Industrial Accident Board.

In a workmen's compensation case involving alleged injury to the employee through heart attacks arising out of and in the course of her employment at a State institution, a finding that, in the absence of

statutory notice of the injury, the Commonwealth as employer and self insurer had knowledge of the attacks within G. L. c. 152, § 44, was not warranted by evidence showing at most that supervisory personnel of the institution learned of the attacks occurring there but not showing that such personnel learned that the attacks were or were claimed to be work connected.   [650–651]

On the record of a workmen's compensation case involving alleged injury through the employee through heart attacks arising out of and in the course of her employment, where there were no adequate subsidiary findings by the Industrial Accident Board, beyond a finding that the employee "received adequate medical care," to justify its conclusion under G. L. c. 152, §§ 44, 49, that the insurer was not prejudiced by want of statutory notice or failure to file the claim seasonably, a final decree of the Superior Court enforcing an award of compensation by the board was reversed and the case was ordered recommitted to the board for amplification of its findings as to prejudice.   [652]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Taveira*, J.

*James J. Kelleher*, Assistant Attorney General, for the Commonwealth.

*Salvatore Musco, Jr.*, for the claimant.

CUTTER, J.   The employee was an attendant nurse at a State institution, where there was a boys' infirmary and also a girls' infirmary.   A single member of the Industrial Accident Board found that the employee "sustained a personal injury arising out of and in the course of her employment, while doing heavy lifting [in the girls' infirmary] which culminated in a heart attack, on or about August 31, 1958."   He also found that further attacks took place on January 4 and June 2, 1959, and that the employee was totally incapacitated from September 1 to December 2, 1958, and from January 5 to November 23, 1959.   "On the issues of notice and claim," the single member found (without finding the fact or date of either notice or claim) "that the insurer [the Commonwealth] was not prejudiced since the persons in superintendency had full knowledge of the claimant's condition, and the employee . . . received adequate medical care following injury on August 31, 1958, and January 4, 1959."   He awarded compensation.

The reviewing board adopted the findings and decision of the single member. In the Superior Court, a decree was entered enforcing the board's decision. The Commonwealth has appealed. It contends that the evidence did not warrant a finding (a) that the Commonwealth had knowledge of the injury or (b) that it was not prejudiced by the want of notice or delay in making claim.

1.  Want of written notice sufficient to satisfy G. L. c. 152, §§ 41, 42, would be excused under § 44 if the Commonwealth as self insurer and employer had knowledge of the injury, or if it was not prejudiced by such want of notice. Failure to file written claim seasonably under § 41 would be excused (see § 49, as amended through St. 1953, c. 314, § 6) if it is found that the failure was "occasioned by mistake or other reasonable cause [not here claimed], or . . . that the insurer was not prejudiced by the delay." The burden is on the employee to prove the Commonwealth's knowledge of the alleged injuries (see *Berthiaume's Case,* 328 Mass. 186, 189–190; *Ogonowsky's Case,* 338 Mass. 468, 471; cf. *Davidson's Case,* 338 Mass. 228, 231) or that it was not prejudiced by the want of notice or by the late claim. See *Russell's Case,* 334 Mass. 680, 682-684; *Herson's Case, ante,* 402, 406.

2.  There was evidence of the following facts. The employee had some heart symptoms when in May, 1958, after an absence from her duties, she began work at the girls' infirmary and was advised to do only light work. She is seeking compensation for an alleged heart attack on September 9, 1958, while lifting a heavy girl in the girls' infirmary. The institution's records showed that she was on vacation for a period after August 8, 1958, was sick on August 29, worked August 31, was sick all September and continuously until December 2, 1958, worked from December 2, 1958, to January 4, 1959, and was marked sick until June 2, when she worked five and one half hours. She has not worked since. On August 28, 1958, the employee was transferred to the boys' infirmary to work. It could have been found that a fellow attendant, a Mrs. Hammond, was with

the employee and knew of the lifting incident in the girls' infirmary alleged to have taken place on September 9, 1958. Mrs. Hammond was a practical nurse in the girls' infirmary, but it was not shown that the employee was working under Mrs. Hammond's direction. The employee claimed another attack on January 7, 1959, when lifting a tray in the boys' infirmary.

Her daughter told someone at the institution by telephone after each of these attacks (August or September, 1958, and January, 1959) that the employee was in the hospital, but the daughter stated that she did not report "how the attack happened or what caused the attack." The supervisor of the institution's attendants did learn at sometime (probably in January, 1959, although the record is not clear) that the employee was sick and a Mrs. Generoux (a fellow employee, doing the same type of work in the boys' infirmary as the employee did there on August 31) "did talk to . . . [the supervisor] about [the] incident supposed to have taken place September 7." The supervisor learned on June 3, 1959, that the employee on the previous day "was taken ill while . . . working" but she was not told that the employee "had [a] heart attack while working."

The treasurer of the institution, Mrs. Biggine, testified that the employee was examined by Dr. Quinn of the institution on April 29, 1959, when "she was claiming disability due to heart condition" but the confusing evidence does not indicate that the disability claimed was "service connected." Possibly, although the reason is not clear, as a prerequisite of her planned return to work in June, the employee was examined on May 8, 1959, by Dr. Brooks. "As a result . . . she returned to work, [the] doctor told her [that she should do] no heavy lifting." On June 2, 1959, she worked briefly in the boys' infirmary; but "she did not lift that day, but just fed" patients, then had an attack. She is now disabled.

The single member found that the treasurer at the institution "knew as of April 29, 1959, that the employee had sustained a heart attack." This finding was warranted but

it does not show knowledge by the treasurer that a service connected injury was claimed. See *Kangas's Case,* 282 Mass. 155, 157; *Herson's Case, ante,* 402, 406, fn. 2; *Garrigan's Case, ante,* 413, 418-419. The single member also found that the supervisor "did receive information about the 1958 incident and also the one of June 2, 1959." If intended as a finding that the supervisor had knowledge that a service connected injury was claimed or had taken place on either date, such a finding is not warranted by the evidence. The supervisor's testimony about a conversation with Mrs. Generoux showed little about the content of the conversation and furnished no basis for any inference that the supervisor was told enough to put her on notice that an injury, claimed to be service connected, had been brought to her attention. There is no evidential support for any finding that the Commonwealth had knowledge of more than that the employee had had three heart attacks while at the institution.

2. The single member's findings on prejudice are meager. He was warranted in finding that the employee "received adequate medical care" following the attacks on August 31, 1958, and January 4, 1959. He has not specifically found absence of other prejudice of a type reasonably to be inferred from this record. The employee's testimony was vague and in some conflict with the hospital records, particularly as to dates. According to these records she was working on August 31 in a different part of the institution from where she claimed the incident took place and was not working at all on the day on which she claimed to have been injured. It may be that some of the inconsistencies, particularly as to dates, are to be explained by failure of the employee's memory. Nevertheless, her unexplained failure to make claim seasonably and to give early notice of claim, coupled with the inconsistencies in her testimony, suggest that this was a case in which want of prompt notice and of timely claim was likely to be prejudicial. Prompt notice and claim would have been natural, for in 1957 the employee had successfully claimed compensation

for an earlier alleged service connected injury and understood what a formal claim was. The employee did not produce the doctors who treated her after each claimed injury, although she did present testimony from a medical witness, called as an expert, who first saw the employee on November 23, 1959. The record thus does not show what contentions about the attacks the employee made shortly after they occurred. There are no subsidiary findings of fact which would justify the conclusion of absence of prejudice.

3. The Attorney General contends that the claim now should be dismissed. That disposition would be warranted by *Russell's Case,* 334 Mass. 680. If the single member had made adequate subsidiary findings on the issue of prejudice, we would be in a position to test whether these were warranted by the testimony and whether they in turn would warrant a conclusion of absence of prejudice. We think that the inferences reasonably to be drawn from the evidence very strongly suggest that the absence of notice and the late claim were prejudicial to the Commonwealth. It may be, however, that the single member drew from the evidence permissible inferences of absence of prejudice which he has not adequately expressed in subsidiary findings. See *Herson's Case, ante,* 402, 407; *Garrigan's Case, ante,* 413, 419–420. Accordingly, the decree is reversed and the case is to be remanded to the board for further subsidiary findings on the issue of prejudice and for such other proceedings consistent with this opinion as the board may deem proper.

*So ordered.*