MICHAEL D. MAHONEY'S (dependent's) CASE.

Suffolk.    May 6, 1958. — June 3, 1958.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, &
WHITTEMORE, JJ.

*Workmen's Compensation Act*, Injuries to which act applies; Procedure:
notice, filing of claim. *Proximate Cause.*

Conflicting medical testimony in a workmen's compensation case war-
ranted a finding by the Industrial Accident Board that inhalation of
asbestos dust by the employee in his work over a period of several
years ultimately brought about a personal injury which caused total
disability then ensuing and continuing until his death nearly eight
years later, and caused his death. [631–632]

Evidence in a workmen's compensation case involving an employee who
suffered a totally disabling personal injury through inhalation of
asbestos dust during his work warranted a finding by the Industrial
Accident Board that the employer, a self insurer, within G. L. c. 152,
§ 44, had knowledge of the injury through the employer's company
doctor and the employee's supervisor. [632]

A finding by the Industrial Accident Board that a self insurer was not
prejudiced by late filing of claim was warranted by the evidence in a
workmen's compensation case involving an employee who through
inhalation of asbestos dust during his work ultimately suffered a per-
sonal injury totally disabling him until his death some eight years later
and who received proper medical care during his disability. [632]

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the workmen's compensa-
tion act awarding compensation to be paid to the employee's
estate from August 10, 1948, to April 11, 1956, except for a
period of twenty-six weeks in which he received unemploy-
ment benefits, and awarding dependency compensation to
his widow from April 11, 1956, and continuing under the
act.

A decree in accordance with the board's decision was en-
tered by *Morton, J.*

*Timothy H. Donohue,* for the self insurer.

*Edward C. Uehlein,* for the claimant.

RONAN, J.  This is an appeal by the self insurer from a
decree of the Superior Court allowing an award of com-
pensation under the workmen's compensation act.  The re-
viewing board affirmed and adopted the findings and de-
cision of the single member who found that the employee
suffered an industrial injury due to the gradual accumula-
tion of asbestos dust and that the date of injury was August
10, 1948, the last day of employment.  See *DeFilippo's
Case*, 284 Mass. 531, 533–534.  He further found that the
employee was totally disabled from the date of his injury
until the date of his death on April 11, 1956, and that the
disability and death were causally related to the injury.  A
decree was entered awarding compensation except for a
period of twenty-six weeks during which the employee was
receiving unemployment compensation.  See *Pierce's Case*,
325 Mass. 649.

The deceased entered the employment of the Johns-Man-
ville Products Corporation on November 7, 1944.  At the
time of his hiring he underwent a preëmployment physical
examination and was in good health.  His first position at
the company was as a helper on a drum sander machine, but
after two or three years he was made an inspector of asbestos
sheets.  As to both positions a considerable amount of white
asbestos dust was raised although the amount was less on the
second job.  In the course of his work the deceased would
become covered with the white dust from the asbestos sheets
he was handling and some of the dust would get in his mouth.
About two or three years after the employee began work he
experienced difficulty with his health in that he began to
feel weak and tired.  A chest X-ray about December 16,
1947, apparently showed no significant changes from the
examination in 1944, but another X-ray about August 11,
1948, showed a "marked increase in the size of the cardiac
shadow . . . [and] unusual prominence of the right border
of the heart and a smooth . . . [curving which] extends
upward from the right cardiac border in the path of the
aorta."

During the last period of his employment the deceased's

health became progressively worse and he complained of shortness of breath and pains in his chest. He retired on August 10, 1948, on the advice of the company doctor. The supervisor, one Gervais, had met the deceased on the road and helped him to get to work when the deceased found he was hardly able to move because of his health. He was transported home the last day he worked. His supervisor advised him to quit which he did. He did not work thereafter for anyone. He frequently consulted many doctors. He submitted to two operations at a Boston hospital in 1950 and 1953 on his lungs. He was confined to a Lowell hospital on many occasions where he died on April 11, 1956. There was testimony that the deceased received proper and adequate medical care from the time he stopped work in August, 1948, to the time of his death.

The findings and decision of the reviewing board are to be sustained wherever possible and they are not to be reversed unless they are wholly lacking in evidential support or are tainted by errors of law. *Lysaght's Case,* 331 Mass. 451, 452–453. *Brek's Case,* 335 Mass. 144, 147. *Sulham's Case, ante,* 586, 589. See also *Hartman's Case,* 336 Mass. 508, 511.

Whether the disability and death of the employee were causally related to the inhalation of asbestos dust while he was employed by the self insurer was the main issue in the controversy which was ably supported by eminent authorities on each side of the question. Those in favor of the proposition traced the cause of the death of the employee to the dust. The opponents attributed his disability and death to causes unconnected with the dust. For instance, they relied upon the fact that a microscopic examination of portions of the lungs made at the autopsy showed too few particles of the asbestos dust to generate such a sequence of events as that suffered by the employee. There was contrary evidence that the small number of particles was immaterial. The medical evidence has been read and carefully examined. It would serve no useful purpose to set it out in detail. It was said in *Murphy's Case,* 328 Mass. 301, 304,

that "It is not for us to determine whether the opinion of . . . [a] doctor was medically sound." A decision upon the question of causation was one of fact, resting entirely upon medical knowledge and within the province of the board to determine. Unless lacking in evidential support it cannot be disturbed by us. *DeFilippo's Case,* 284 Mass. 531, 534–535. *Anderson's Case,* 288 Mass. 96, 98–99. *Wnukowski's Case,* 296 Mass. 63, 65. *Zabec's Case,* 302 Mass. 465, 467. *Gustafson's Case,* 303 Mass. 397, 399. *Duggan's Case,* 315 Mass. 355, 358–359. *McKeon's Case,* 326 Mass. 202, 205. *Kulig's Case,* 331 Mass. 524, 525.

The board's finding that the self insurer received "notice" is in effect a finding that the employer "had knowledge of the injury." See G. L. c. 152, § 44. Dr. Hajjar[1] knew of the deceased's chest condition and advised him to quit work on account of his "bad chest." In addition, Gervais was informed by the decedent of his symptoms of ill health and he too advised the decedent to stop work. And where the employer knew of the likelihood of asbestosis because of the taking into the human body of asbestos dust, we think the finding of knowledge was supported by sufficient evidence. *Kulig's Case,* 331 Mass. 524, 526. *Brown's Case,* 334 Mass. 343, 347–348. See also *Wnukowski's Case,* 296 Mass. 63, 66; *Gustafson's Case,* 303 Mass. 397, 400; *Tassone's Case,* 330 Mass. 545, 548–549.

The final contention by the self insurer is that there was error in the board's finding of no prejudice because of the failure to file a claim "within the time fixed by section forty-one" (see G. L. c. 152, § 49).[2] This contention cannot be maintained. There is abundant evidence that the deceased received immediate, proper and almost constant medical care from the time he terminated his employment until his death, and there is no suggestion that any other treatment would in fact have been more beneficial. *Berthiaume's Case,* 328 Mass. 186, 191. *Tassone's Case,* 330 Mass. 545, 548. *Kulig's Case,* 331 Mass. 524, 526. *Brown's Case,*

[1] Dr. Hajjar was the company doctor. — REPORTER.
[2] Claim was filed by the employee on July 15, 1953. — REPORTER.

334 Mass. 343, 347–348. *Channell's Case, ante,* 124, 127. Nor can the self insurer claim it was prejudiced because of any inability to procure evidence by reason of the delay in learning of the injury. The board was not required to find in the circumstances that the alleged failure of counsel to furnish the self insurer with a copy of the medical reports by Dr. John Strieder was prejudicial. *Kangas's Case,* 282 Mass. 155, 159. *Berthiaume's Case,* 328 Mass. 186, 191. *Tassone's Case,* 330 Mass. 545, 548–549. *Charron's Case,* 331 Mass. 519, 521. *Channell's Case, ante,* 124, 127–128. See also *Clifford's Case, ante,* 129, 131.

The decree is affirmed. Costs of the appeal are to be determined by the single justice under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, as amended by St. 1949, c. 372.

*So ordered.*