HELEN J. KELLY'S CASE.

Suffolk.  December 4, 1984. — May 6, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Emotional distress.

An emotional breakdown suffered by an employee as a result of being told by her employer that she would be laid off from the department in which she had been working and transferred to another department was a personal injury "arising out of and in the course of . . . employment" within the meaning of G. L. c. 152, § 26. [686-689] HENNESSEY, C.J., dissenting, with whom WILKINS and LYNCH, JJ., join.

CERTIFICATION to the Superior Court Department of a decision by the Industrial Accident Board.

The case was heard by *Wilfred J. Paquet*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Joseph F. Fidler, Jr.* (*Andrew P. Saltis* with him) for the insurer.

*Robert E. Keane* for the employee.

*Sanford A. Kowal & Emanuel Howard,* for Associated Industries of Massachusetts, Inc., amicus curiae, submitted a brief.

*Wayne S. Henderson*, for New England Legal Foundation, amicus curiae, submitted a brief.

*Paul F. X. Powers*, for Alliance of American Insurers & another, amici curiae, submitted a brief.

O'CONNOR, J. In this workers' compensation case, we hold that an employee who has an emotional breakdown as a result of being told that she will be laid off from one department and transferred to another one, has suffered a personal injury "arising out of and in the course of . . . employment" within the meaning of G. L. c. 152, § 26.

This is the insurer's appeal from a judgment entered in the Superior Court, and affirmed by the Appeals Court, 17 Mass. App. Ct. 727 (1984), awarding compensation under G. L. c. 152 to Helen J. Kelly, the employee. The judgment reversed a decision of the Industrial Accident Board's reviewing board which had affirmed a single member's decision denying Kelly compensation. We granted the insurer's application for further appellate review. We affirm the judgment entered in the Superior Court.

The findings of the single member were adopted by the reviewing board and, because they have evidential support and are not tainted by error of law, they are final. *Haley's Case*, 356 Mass. 678, 679-680 (1970), and cases cited. We summarize the findings as follows. Kelly was employed by Raytheon Corporation for twenty-two years prior to August, 1977. At the time of the events giving rise to this case, she worked as an associate training specialist and was responsible for running Raytheon's training center. She was happily married, had two grown children, and got along well with her supervisor.

On Friday, August 19, 1977, Kelly's supervisor called her aside and told her that the company was cutting back in her department and that she would be laid off. Kelly began to cry, was unable to compose herself, and went home early. She remained upset over the weekend. When she returned to work on Monday, August 22, she was told that she could transfer to the cable department and work there as a foreperson. Kelly was not pleased to work in the cable department, and on that same day she became depressed, developed chest pains, and was taken to a hospital where she was put on medication.

Kelly remained out of work for six weeks. She returned to work in the cable department on October 5, 1977, but on October 14 she again developed chest pains and was taken to the hospital. Thereafter, she underwent psychiatric treatment for depression, she lost weight, and she experienced difficulty in sleeping. Based on the testimony of her psychiatrist, the single member found that Kelly "has been totally disabled from August 22, 1977 to date" and that "her depression was caused by her hearing that she was to be laid off from one department

and transferred to another." The single member concluded, however, that Kelly had not suffered an injury arising out of and in the course of her employment and therefore was not entitled to compensation. The reviewing board agreed. That conclusion is not to be reversed unless a different conclusion is required as a matter of law. *Corraro's Case*, 380 Mass. 357, 359 (1980). We believe that the law does require a different conclusion.

The findings of the single member clearly establish that Kelly suffered a "personal injury" within the meaning of the act. We have held in several cases that emotional disability, if caused by employment, is a compensable personal injury under G. L. c. 152. *Simmons* v. *Merchants Mut. Ins. Co.*, *post* 1007 (1985). *Foley* v. *Polaroid Corp.*, 381 Mass. 545, 550 (1980). *Albanese's Case*, 378 Mass. 14, 17 (1979). *Fitzgibbons's Case*, 374 Mass. 633, 637-638 (1978). In none of those cases did we suggest that entitlement to workers' compensation for emotional disability requires proof of facts in addition to those required when the disability is only physical, and we discern no basis in G. L. c. 152 for such a requirement. Nor can it properly be contested that Kelly's injury was caused by her hearing that she would lose her position as a training specialist. Regardless of whether Kelly's experience is viewed as a forced transfer from one position to another or as a layoff, the single member has determined with finality that Kelly's disability is attributable to that event. The only new question presented by this case, then, is whether disability that results from an employee's learning that she will be laid off from one department and assigned to another may be said to arise out of and in the course of employment, as is required for entitlement to workers' compensation under G. L. c. 152.

A disability arises out of and in the course of employment if it is "attributable to the 'nature, conditions, obligations or incidents of the employment; in other words, [to] employment looked at in any of its aspects.' " *Zerofski's Case*, 385 Mass. 590, 592 (1982), quoting *Caswell's Case*, 305 Mass. 500, 502 (1940). Thus, the question is whether the event that caused

Kelly's disability was an incident of employment "in any of its aspects." We have no doubt that that event was such an incident, particularly in view of the long-standing principle that the workers' compensation statute should be construed, whenever possible, in favor of the employee so as "to promote the accomplishment of its beneficent design." *Young* v. *Duncan*, 218 Mass. 346, 349 (1914). Kelly, then, is within the class of persons the Legislature sought to protect by G. L. c. 152.

We reject any contention that Kelly is not entitled to workers' compensation unless her emotional disability resulted from an unusual and objectively stressful or traumatic event. "Our decisions place injuries attributable to specific events at work within the business risks covered by the act, even when employment does not expose employees to an unusual risk greater than that experienced by the general public. *Caswell's Case*, 305 Mass. 500, 502 (1940) (injury at work during hurricane). See *Fitzgibbons's Case*, 374 Mass. 633, 638 (1978)." *Zerofski's Case, supra* at 595 n.2. Furthermore, it is settled law that an employer takes his employee "as is," that is, with whatever peculiar vulnerabilities to injury the employee may have, and that "an identifiable incident or strain need not be unusual or severe to support compensation if the particular employee succumbs to it. See, e.g., *McManus's Case*, 328 Mass. 171 (1951) (bending over caused hernia)." *Zerofski's Case, supra* at 593.

Nothing in *Simmons* v. *Merchants Mut. Ins. Co., supra, Fitzgibbons's Case, supra, Albanese's Case, supra,* or *Foley* v. *Polaroid Corp., supra,* is at variance with the above stated principles. Although the work-related events in those cases were unusually stressful, we attached no significance to the unusualness of the stress in arriving at our holdings. The unusualness of the stress in each case simply served to identify specific work-related events as causes of the employees' emotional disabilities. In the instant case, despite the absence of an unusual, objectively stressful, event, the single member's finding has nevertheless established that a specific work-related event caused the employee's emotional disability. Nothing more is needed to satisfy G. L. c. 152.

Cases involving injuries due to gradual deterioration, or bodily wear and tear, are inapposite. When disability results, not from a single work-related event or series of events, but from gradual deterioration, a causal relationship between employment and the disability can only be established by showing that the employment exposed the employee to "an identifiable condition [of the employment] that is not common and necessary to all or a great many occupations." *Zerofski's Case, supra* at 595. Compare *Zerofski's Case, supra* at 596 ("Prolonged standing and walking are simply too common among necessary human activities to constitute identifiable conditions of employment"), with *Madden's Case*, 222 Mass. 487, 496 (1916) ("When a pre-existing heart disease of the employee is accelerated to the point of disablement by the exertion and strain of the employment, not due to the character of the disease acting alone or progressing as is would in any rational work," the injury is compensable under the act). However, when an injury is attributable to a specific work-related event, as here, or a series of such events, rather than to gradual wear and tear, the employee need not show that the employment exposed him or her to an unusual risk greater than that experienced by the general public. "To be compensable, the harm must arise *either* from a specific incident or series of incidents at work, *or* from an identifiable condition that is not common and necessary to all or a great many occupations" (emphasis added). *Zerofski's Case, supra* at 594-595.

We agree with the Appeals Court that Kelly is entitled to compensation, and that *Korsun's Case*, 354 Mass. 124 (1968), does not require a different result. "As the court noted in *Fitzgibbons's Case, supra* at 639, 'there was a lack of evidence [in *Korsun's Case*] with which to connect the alleged precipitating event to Korsun's employment.' There is no such failure to prove causation in the present case. And as further noted in *Zerofski's Case*, 385 Mass. at 594, the language in *Korsun's Case* (at 128) concerning apprehension about losing one's job [as not arising out of the nature, conditions, obligations, or incidents of the employment] refers to injuries caused by the general stress of work which are rendered noncompensable by

the 'wear and tear' doctrine. We consider *Korsun's Case* to have been limited by later opinions and to be inapplicable to the facts here." (Footnote omitted.) 17 Mass. App. Ct. 727, 730-731 (1984).

Our reasoning essentially tracks that of the Appeals Court. But that court found "the result troubling and one which may involve a larger extension of liabililty than the [*Albanese* and *Fitzgibbons*] cases contemplated." 17 Mass. App. Ct. at 733. We recognize that layoffs and job transfers are frequent events, and that emotional injuries are more prone to fabrication and less susceptible to substantiation than are physical injuries. Nevertheless, it is within the Legislature's prerogative to determine, as a matter of public policy, whether one of the costs of doing business in this Commonwealth shall be the compensation of those few employees who do suffer emotional disability as a result of being laid off or transferred, and it is also the Legislature's prerogative to say whether determination of the existence of such a disability is appropriately left to the expertise of the Industrial Accident Board. We construe G. L. c. 152, § 26, as providing that an employee who suffers emotional disability as a result of layoff or transfer is entitled to workers' compensation, and as vesting in the Industrial Accident Board the responsibility to make the relevant factual determination. Because the single member found that Kelly suffered such a disability, we affirm the judgment of the Superior Court.

*So ordered.*

HENNESSEY, C.J. (dissenting, with whom Wilkins and Lynch, JJ., join). Today the court has held that an employee is entitled to workers' compensation for an emotional injury caused by news of her economically-motivated work transfer. By reversing the board's finding that Kelly did not suffer a work-related injury within the meaning of G. L. c. 152, § 26, the court has expanded the scope of our workers' compensation law far beyond what the Legislature ever intended. As a result,

the critical distinction between workers' compensation and unemployment insurance is disappearing. Accordingly, I dissent.

An employee is entitled to compensation under G. L. c. 152, § 26, where his or her injury — whether physical or emotional — arose "out of and in the course of" employment. *Zerofski's Case*, 385 Mass. 590, 592 (1982), quoting *Caswell's Case*, 305 Mass. 500, 502 (1940). In the past, we have recognized that "[m]uch of the responsibility for separating injuries that are sufficiently work-related from those that are not rests with the Industrial Accident Board, which must determine as a matter of fact whether a causal connection exists between employment and injury." *Zerofski's Case, supra* at 594. See *Mahoney's Case*, 337 Mass. 629, 632 (1958) ("A decision upon the question of causation was . . . within the province of the board to determine"). On judicial review the findings of the reviewing board must be accepted as final unless they are wholly lacking in evidential support or tainted by error of law. *Korsun's Case*, 354 Mass. 124, 125 (1968), and cases cited. We have given particular deference to an agency's interpretation of its governing statute where "the statute itself vests broad powers in the agency to fill in the details of the legislative scheme." *Amherst-Pelham Regional School Comm.* v. *Department of Educ.*, 376 Mass. 480, 492 (1978). I think the court here has failed to accord appropriate deference to the board's construction of the controlling statute as applied to the facts of this case. This is emphatically evident in light of the fact that the board's decision is consistent with our prior relevant decisions.

Where employees have received compensation for mental or emotional disorders caused by nonphysical work-related trauma, we have previously relied on findings by the board that the injury resulted from a "single traumatic event . . . a stress greater than the ordinary stresses of everyday work," *Fitzgibbons's Case*, 374 Mass. 633, 638 (1978), or a series of "specific, stressful work-related incidents," *Albanese's Case*, 378 Mass. 14, 18 n.4 (1979). See *Foley* v. *Polaroid Corp.*, 381 Mass 545, 550 (1981). We have said that what is critical in determining causation is not the subjective feelings

of the employee but the objective event "triggering the . . . feelings." *Fitzgibbons's Case, supra* at 639.

In this case, the testimony before the single member indicated that the employee suffered disabling depression when faced with the loss of a satisfying job and a transfer to a less desirable assignment. There was no evidence that the layoff was motivated by other than economic reasons or that the information was given to the employee in a particularly stressful manner. Nor did the board accept evidence that the employee's treatment in her new assignment aggravated her emotional condition.

Thus, in the circumstances of this case, the single member and the review board were fully warranted in concluding that the event triggering the employee's depression — the termination of her position and her transfer within the company — did not constitute the type of "mentally traumatic [event]" which would be sufficient to identify employment as the cause of her disability. *Fitzgibbons's Case, supra* at 638. Rather the type of decision made here is "common and necessary to . . . a great many occupations," *Zerofski's Case, supra* at 595, and while such decisions may understandably cause stress among some affected employees it is no "greater than the ordinary stresses of everyday work," and is therefore noncompensable. *Fitzgibbons's Case, supra.*

When we compare the events causing the employees' mental injuries in the *Fitzgibbons, Albanese,* and *Foley* cases, it becomes apparent that we are not presented with a similarly identifiable stressful work-related incident here. In *Fitzgibbons's Case, supra,* the employee suffered an emotional breakdown and subsequently committed suicide after learning that a subordinate had died while performing an assigned duty. In *Albanese's Case, supra,* the claimant was a "working foreman," caught between the conflicting demands of labor and management, who became incapacitated after a series of workplace confrontations in which management attempted to undermine his authority. In *Foley* v. *Polaroid Corp., supra,* the employee's emotional injury resulted from his employer's conduct in response to charges of rape and assault brought against the employee by a coworker. The employer carried out a private

investigation of the complaint resulting in the filing of criminal charges, compelled the employee to take a leave of absence pending trial, discouraged other employees from testifying on his behalf, and subsequently transferred the employee, after he was acquitted of the charges, to a new work location where he received no assignments.

In all three prior cases the events causing the employees' injuries were unusually stressful by any objective criteria. Here, however, the employee's depression was precipitated by notice of an ordinary employment decision. The extraordinary nature of her emotional response reflected her admitted apprehension over the prospect of unemployment. In these circumstances, "[a]pprehension over the prospect of losing one's job does not arise 'out of the nature, condition, obligations or incidents of the employment.' . . . Rather it is a state of mind which arises from the common necessity of working for a living. Social legislation designed to relieve the consequences of losing one's job is found elsewhere." *Korsun's Case*, 354 Mass. 124, 128 (1968).

The court's opinion incorrectly states that we have never before suggested that a stricter standard of proof is required under G. L. c. 152, § 26, for establishing the causal nexus between employment and emotional injury. In fact, we have never before allowed compensation for emotional injuries without proof that the injuries resulted from particularly stressful work-related incidents. See *Albanese's Case, supra* at 18 n.4; *Zerofski's Case, supra* at 595 n.3. We have emphasized (*Fitzgibbons's Case, supra* at 639) the nature of the objective event which triggered the emotional reaction of the employee to determine whether an emotional injury is sufficiently work-related, and this is the reasoning which has been followed by several other jurisdictions. See *Seitz* v. *L & R Indus.*, 437 A.2d 1345 (R.I. 1981) (psychic injury due to routine transfer to new work location was not compensable); *School Dist. No. 1, Village of Brown Deer* v. *Department of Indus., Labor & Human Relations*, 62 Wisc. 2d 370 (1974) (teacher's depression on learning student council recommended her dismissal was not compensable). Cf. *Elwood* v. *State Accident Ins. Fund*

*Corp.*, 67 Or. App. 134 (1984) (stressful, work-related events, including termination, contributed to compensable mental disorder); *Rega* v. *Kaiser Aluminum & Chem. Corp.*, 475 A.2d 213 (R.I. 1984) (injury compensable due to excessively stressful firing, rehiring, and deprivation of pension benefits). See Note, Determining the Compensability of Mental Disabilities and Workers' Compensation, 55 S. Cal. L. Rev. 193, 194-199 (1981); Joseph, The Causation Issue in Workers' Compensation Mental Disability Cases: An Analysis, Solutions, and a Perspective, 36 Vand. L. Rev. 263, 304-305 (1983).

In our previous cases we have required a showing of one or more specific stressful, traumatic events as the cause of the emotional jury. By departing from those limits, the court has opened workers' compensation to distressed claimants who have simply experienced economically inevitable terminations and transfers. I think the court has departed from the legislative intent, and I also think that this judicial venture will invite claims in such numbers as to have a substantial economic impact upon employers.