57 F.3d 21
 68 Fair Empl.Prac.Cas. (BNA) 34,
68 Fair Empl.Prac.Cas. (BNA) 352,
66 Empl. Prac. Dec. P 43,617
Karin CLARKE, Plaintiff, Appellant,
v.
KENTUCKY FRIED CHICKEN OF CALIFORNIA, INC., Defendant, Appellee.
 No. 94-1950.
 United States Court of Appeals,
First Circuit.
 Heard Jan. 12, 1995.
Decided June 14, 1995.
 
 Kevin G. Powers, with whom Robert S. Mantell and Law Office of Kevin G. Powers, Boston, MA, were on brief, for appellant.
 Jeffrey G. Huvelle, with whom Melissa Cole, Covington & Burling, Washington, DC, Terry Philip Segal, Brenda R. Sharton and Segal & Feinberg, Boston, MA, were on brief, for appellee.
 Nan Myerson Evans, Bon Tempo & Evans and David A. Robinson, on brief of amicus curiae National Employment Lawyers Ass'n.
 SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and CYR, Circuit Judge.
 CYR, Circuit Judge.
 
 
 1
 Plaintiff Karin Clarke appeals from a district court judgment dismissing her sexual harassment claim against her former employer, Kentucky Fried Chicken of California, Inc. ("KFC"), for failure to exhaust administrative remedies, and dismissing her related state-law tort claims on preemption grounds. We affirm the judgment.
 
 
 2
 * BACKGROUND
 
 
 3
 While employed by defendant KFC at a fast-food restaurant in Saugus, Massachusetts, Clarke was sexually harassed, physically assaulted, and subjected to attempted rape by other KFC employees. Clarke quit her job and initiated the present lawsuit in Massachusetts Superior Court, alleging sexual harassment, negligent and reckless infliction of emotional distress, and negligent hiring, retention and supervision.
 
 
 4
 After removing the case to federal district court, see 28 U.S.C. Secs. 1441, 1446; see also id. Sec. 1332 (diversity jurisdiction), KFC filed a motion to dismiss all claims, see Fed.R.Civ.P. 12(b)(6), contending that the sexual harassment claim under Mass.Gen.L.Ann. ch. 214, Sec. 1C, was barred for failure to exhaust mandatory administrative remedies before the Massachusetts Commission Against Discrimination ("MCAD"), see Mass.Gen.L. ch. 151B, Sec. 5 (prescribing six-month limitation period for MCAD claims), Sec. 9 (making section 5 procedure "exclusive"), and that Clarke's common law tort claims were preempted by the Massachusetts Workers' Compensation Act, see Mass.Gen.L. ch. 152, Sec. 1 et seq. (Supp.1994). The motion to dismiss was granted in its entirety. Clarke v. Kentucky Fried Chicken of California, Inc., No. 94-11101-EFH (D.Mass. Aug. 17, 1994).[1]II
 
 DISCUSSION
 A. Sexual Harassment
 
 5
 Clarke first contends that the district court should not have dismissed her sexual harassment claim, because the "jurisdictional" clause in Mass.Gen.L.Ann. ch. 214, Sec. 1C (1986) ("The superior court shall have jurisdiction in equity to enforce this right and to award damages.") evinces a clear legislative intent to except such claims from compliance with the otherwise mandatory MCAD exhaustion requirement imposed on other employment-based discrimination claims under Massachusetts law. In order to place her contention in context, we examine pertinent case law and statutes, see infra APPENDIX at pp. (i)-(iii).
 
 
 6
 1. Fair Employment Practices Act, Mass.Gen.L.Ann. ch. 151B
 
 
 7
 In 1946 the Massachusetts Legislature enacted the Fair Employment Practices Act ("FEPA"), Mass.Gen.L.Ann. ch. 151B, Sec. 1 et seq., which contained a comprehensive list of unlawful discriminatory acts by covered Massachusetts employers against their employees.[2] See id. Sec. 4; Katz v. MCAD, 365 Mass. 357, 312 N.E.2d 182, 187 (1974) (noting that FEPA was enacted "to implement the right to equal treatment guaranteed to all citizens by the constitutions of the United States and the Commonwealth").[3] Gender-based discrimination was included in the section four listing as an unlawful employment practice. See Mass.Gen.L.Ann. ch. 151B, Sec. 4(1); see also College-Town v. MCAD, 400 Mass. 156, 508 N.E.2d 587 (1987) (interpreting FEPA Sec. 4(1) as encompassing sexual harassment by employers and supervisory employees).
 
 
 8
 FEPA claimants must file their MCAD claims within six months after the alleged discriminatory act, or forfeit any entitlement to judicial review. See Mass.Gen.L.Ann. ch. 151B, Secs. 5, 9 ("As to acts declared unlawful in section four, the procedure provided in [chapter 151B, Sec. 5] shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.") (emphasis added); see also Ackerson v. Dennison Mfg. Co., 624 F.Supp. 1148, 1150 (D.Mass.1986) (holding that compliance with six-month limitation period becomes unwaivable "jurisdictional" prerequisite to civil suit).
 
 
 9
 As to section four administrative claims which are adjudicated by the MCAD within ninety days from filing, either the claimant or the respondent may obtain limited review on petition to the superior court, Mass.Gen.L.Ann. ch. 151B, Sec. 6, followed by an appeal of right to the Supreme Judicial Court ("SJC").[4] Unless the MCAD fails to act within ninety days or grants an express dispensation, the claimant may not bypass the administrative claims process by filing a civil action for damages or injunctive relief directly with either the superior court or the probate court. Id. Sec. 9.
 
 
 10
 In 1986, the Massachusetts Legislature--presaging the SJC's College-Town decision, supra --amended FEPA by explicitly including "sexual harassment" within the comprehensive list of employer acts proscribed under section 4. See 1986 Mass. Acts 588 (codified at Mass.Gen.L.Ann. ch. 151B, Sec. 1(18) (definition of "sexual harassment"), Sec. 4(16A)). At the same time, the Legislature amended Chapter 214, a separate statutory provision vesting the superior court with original equity jurisdiction as follows: "A person shall have the right to be free from sexual harassment, as defined in [FEPA Sec. 1(18) ]. The superior court shall have jurisdiction in equity to enforce this right and to award damages." 1986 Mass. Acts 588 (codified at Mass.Gen.L.Ann. ch. 214, Sec. 1C) (emphasis added) [hereinafter: "Section 1C"].
 
 2. The ERA and Charland
 
 11
 Enacted in 1989, the Equal Rights Act ("ERA"), Mass.Gen.L.Ann. ch. 93, Secs. 102, 103, proscribes, inter alia, gender-based discrimination in connection with the execution and enforcement of contracts and provides that "[a] person whose rights ... have been violated may commence a civil action for injunctive and other appropriate equitable relief, including the award of compensatory and exemplary damages. Said civil action shall be instituted ... in the superior court...." Id. Sec. 102(b).
 
 
 12
 Later, in Charland v. Muzi Motors, Inc., 417 Mass. 580, 631 N.E.2d 555 (1994), the SJC held that ERA section 102(b) does not excuse claimants from compliance with the comprehensive administrative claims procedure established in FEPA section 9, supra. Rather, in enacting the ERA, the Legislature presumably was aware that FEPA section 9 had long mandated MCAD exhaustion for all employment-based discrimination claims alleging "unlawful practice[s] " listed in FEPA section 4. Charland, 631 N.E.2d at 558 (noting "legislative intent to subject all discrimination claims to administrative scrutiny") (emphasis added). And since Charland had alleged a breach of his employment contract, arising out of his wrongful discharge based on age and national origin--an employment-based claim actionable under FEPA, see Mass.Gen.L.Ann. ch. 151B, Sec. 4(1) (barring discharge from employment because of "national origin" or "age")--the SJC held that Charland's superior court action must be dismissed for failure to file a timely administrative claim with the MCAD. Charland, 631 N.E.2d at 559; see also Agin v. Federal White Cement, Inc., 417 Mass. 669, 632 N.E.2d 1197, 1199 (1994) (same).
 
 3. Standard of Review
 
 13
 Where, as here, a district court dismissal turns upon an interpretation of state law, we conduct plenary review. See Salve Regina College v. Russell, 499 U.S. 225, 239-40, 111 S.Ct. 1217, 1225-26, 113 L.Ed.2d 190 (1991).[5] The issue before us on appeal is whether Section 1C, unlike ERA sections 102 and 103, excepts the instant employment-based sexual harassment claim from compliance with the administrative exhaustion requirement in FEPA section 9. Clarke argues that Charland is not controlling, because it resolved only the legislative correlation between FEPA and the ERA, which would mean that Charland 's reference to "the legislative intent to subject all discrimination claims to administrative scrutiny" was mere dictum. KFC responds that the Charland rationale likewise bars Clarke's unexhausted Section 1C claim--a gender-based employment discrimination claim explicitly listed in FEPA section 4(16A) as an unlawful act.
 
 4. Section 1C
 
 14
 Clarke would distinguish Section 1C from ERA sections 102 and 103 on the ground that it evinces a clear legislative intent to create two parallel remedial paths for redressing sexual harassment claims--one administrative, one judicial. Unlike the ERA, which became law some fifty years after FEPA, Section 1C was enacted at the same time the Legislature amended FEPA section 4 to cover sexual harassment claims. Consequently, Clarke argues, unless Section 1C is interpreted as establishing a parallel judicial path that bypasses the MCAD administrative remedy, Section 1C becomes surplusage. See Casa Loma, Inc. v. Alcoholic Beverages Control Comm'n, 377 Mass. 231, 385 N.E.2d 976, 978 (1979) ("It is a common tenet of statutory construction that, wherever possible, no provision of a legislative enactment should be treated as superfluous."). We agree with Clarke that Charland is not directly controlling, since it did not consider the unique language and legislative history of Section 1C.
 
 
 15
 Nevertheless, absent a definitive SJC ruling, we may look to "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the [SJC] would decide the issue at hand, taking into account the broad policies and trends so evinced." Michelin Tires (Canada) Ltd. v. First Nat'l Bank, 666 F.2d 673, 682 (1st Cir.1981) (emphasis added); see also Gibson v. City of Cranston, 37 F.3d 731, 736 (1st Cir.1994).[6] Charland categorically states that a claimant alleging an unlawful discriminatory act listed in FEPA section 4 must comply with the MCAD administrative process, absent clear evidence that the Legislature carved out an exception. Moreover, the listing of unlawful acts in section 4 is so comprehensive that the SJC has yet to identify an exception. See Charland, 631 N.E.2d at 558 (citing with approval Mouradian v. General Elec. Co., 23 Mass.App.Ct. 538, 503 N.E.2d 1318 (1987) (Massachusetts Civil Rights Act claimants must first comply with FEPA's MCAD procedure)).
 
 
 16
 The language of 1986 Mass. Acts 588--amending the FEPA section 4 listing and adding new Section 1C, see supra pp. 23-24--does not indicate the interpretation urged by Clarke, since it does not specify at what point in the sexual-harassment-claim process original superior court jurisdiction vests. Under the Charland rationale, once employment-based sexual harassment claims were added to the FEPA section 4 listing by the Legislature, the MCAD claim-filing procedure mandated by FEPA section 9 presumptively became the exclusive procedural path for initiating all such claims against "employers." After the MCAD renders a final decision, of course, jurisdiction to review its decision would lie in the appropriate superior court. See supra pp. 23-24. In some instances, however, administrative claims may not be acted upon within ninety days by the MCAD; alternatively, the MCAD may permit the claimant to proceed directly with a civil action in a judicial forum.
 
 
 17
 Thus, like its counterpart provision, FEPA section 9, Mass.Gen.L.Ann. ch. 151B, Sec. 9 (vesting superior, probate, and housing courts with original jurisdiction of FEPA claims), Section 1C serves an essential function--by vesting in the superior court (as distinguished from the SJC, for example) exclusive original jurisdiction to entertain such administratively exhausted--but unadjudicated--sexual harassment claims.[7] Therefore, much like ERA sections 102(b) and 103(b), which provide that claimants "may commence a civil action for injunctive and other appropriate equitable relief ... in the superior court" without indicating when such a civil action may be commenced, the mere fact that Section 1C designates which court shall have original jurisdiction over exhausted--but unadjudicated--MCAD claims does not mean that the designated judicial forum may assert jurisdiction ab initio, i.e., before (or in the absence of) a timely MCAD claim.
 
 
 18
 Neither party cites to the legislative history relating to Section 1C, though it appears fairly illuminating. The legislative bill approved by the House Committee on Commerce and Labor (H.5732) represented a compromise melded from eight competing Senate and House versions relating to sexual harassment in employment and education. Two of these predecessor versions provided as follows: "A person shall have the right to be free from sexual harassment.... The superior court shall have jurisdiction in equity to enforce this right and to award damages. The filing of a complaint under chapter 151B shall not be a prerequisite to filing a complaint under this section in superior court." H.3136 (sponsor, B. Gray, Framingham); see also H.488 (Saggese, Winthrop) (emphasis added). It is noteworthy that the only pertinent deletion before Section 1C became law was the italicized language from H.3136 and H.488 quoted supra. See Russello v. United States, 464 U.S. 16, 23-24, 104 S.Ct. 296, 300-301, 78 L.Ed.2d 17 (1983) (noting that deletions of limiting language from predecessor bills normally presumed intentional); State of Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 700 (1st Cir.) (same), cert. denied, --- U.S. ----, 115 S.Ct. 298, 130 L.Ed.2d 211 (1994).
 
 
 19
 Clarke argues that Section 1C is unlike ERA sections 102 and 103, which encompass claims for employment-based discrimination listed in FEPA section 4 as well as sundry non-employment-based discrimination claims which might not be listed in FEPA. Thus, the ERA enactment may be seen as serving an independent function even after Charland. That is, though all ERA employment-based claims of a type listed in FEPA section 4 would be subject to FEPA's administrative exhaustion requirement, see Charland, 631 N.E.2d at 558-59, non-employment-based ERA claims not listed in FEPA section 4 (if any) might be initiated directly in the superior court without administrative exhaustion. By contrast, Section 1C encompasses only sexual harassment claims which are employment-based, compare Mass.Gen.L.Ann. ch. 151B, Sec. 1(18) (defining "sexual harassment" in terms of "employment decisions," "work performance," and "work environment") with Mass.Gen.L.Ann. ch. 214, Sec. 1C (prohibiting harassment "as defined in chapter [151B]"), and all employment-based gender discrimination claims already fall within FEPA section 4, and, consequently, come within the mandatory administrative exhaustion provision. Clarke reasons, therefore, that unless Section 1C is interpreted as providing employment-based sexual harassment claimants an MCAD bypass into superior court, its enactment was redundant and superfluous. See Casa Loma, Inc., 385 N.E.2d at 978 (noting that, where possible, statutes ought not be interpreted so as to render any provision superfluous). But see supra note 7 (investing superior court with jurisdiction over all exhausted Section 1C claims, as opposed to superior, probate, and housing courts designated in FEPA section 9).
 
 
 20
 On the other hand, KFC points out--correctly in our view--that the Legislature may well have intended that Section 1C make all employment-based sexual harassment unlawful in Massachusetts, without regard to the number of employees working for the particular employer, whereas other forms of employment-based discrimination would be covered by FEPA only if practiced by employers who hire more than five persons. See supra note 2. This interpretation is substantiated by the fact that Section 1C is not tied into FEPA's definition of "employer," but only to FEPA's definition of "sexual harassment." Although Clarke counters that the Legislature could have achieved the same result simply by amending the FEPA definition of "employer" to accommodate this exception, we are not persuaded--nor aware of any authority--that the amendatory technique she suggests was the only one open to the Legislature.
 
 
 21
 Clarke further contends that it would be incongruous to require only the employees of large-scale employers to comply with the MCAD administrative claims process, and not employees of small-scale employers, since such an interpretation would contravene the Charland holding that all discrimination claims are subject to the exhaustion requirement. This contention is demonstrably flawed as well. Charland simply held that MCAD exhaustion is required if the claim alleges an unlawful act listed in FEPA section 4. And discriminatory conduct by small-scale employers is not listed in section 4. See Mass.Gen.L.Ann. ch. 151B, Sec. 4(16A) (unlawful "[f]or an employer, personally or through its agents, to sexually harass any employee"); see also supra note 2. Absent ambiguity in the statutory language, we think it inappropriate to second-guess the Legislature's clear language establishing broadened protection for victims of sexual harassment.
 
 
 22
 Finally, Clarke argues that the Legislature singled out all sexual harassment claims--from other types of employment-based discrimination claims under FEPA--because sexual harassment normally warrants more urgent remedial action and, by affording sexual harassment victims direct access to the superior court, Section 1C would enable more immediate equitable relief. Her contention is unavailing for two reasons.
 
 
 23
 First, Clarke reserved this argument for her reply brief on appeal, thereby denying KFC an opportunity to respond. See VanHaaren v. State Farm Mut. Auto. Ins. Co., 989 F.2d 1, 7 n. 6 (1st Cir.1993). Second, even if it were not waived, the claim is meritless since FEPA already provides the very remedial mechanisms Clarke would have us read into Section 1C. See Mass.Gen.L.Ann. ch. 151B, Sec. 5 (MCAD commissioner "may also file a petition in equity in the superior court ... seeking appropriate injunctive relief against such respondent...."); Sec. 9 ("An aggrieved person may also seek temporary injunctive relief in the superior ... court ... at any time to prevent irreparable injury during the pendency of or prior to the filing of a complaint with the [MCAD].") (emphasis added).
 
 
 24
 For the foregoing reasons, therefore, we conclude that it is reasonably likely that the SJC would extend its Charland rationale to Section 1C, thereby preserving the comprehensive procedural framework established by the Legislature in FEPA section 9. Consequently, the district court judgment dismissing the sexual harassment claim for failure to exhaust administrative remedies under the MCAD must be affirmed.
 
 B. Common Law Tort Claims[8]
 
 25
 Clarke contends that the district court erred in ruling that the three remaining common law claims--alleging negligence in hiring, supervising and retaining the offending KFC employees--were preempted by the Massachusetts Workers' Compensation Act, Mass.Gen.L.Ann. ch. 152, Sec. 24. We briefly reprise the legislative history relating to recent amendments to the workers' compensation statute.
 
 
 26
 From the start, section 24 of the Massachusetts workers' compensation statute included a comprehensive preemption provision precluding injured workers from instituting tort actions "in respect to an [employment-related] injury that is compensable [through the payment of disability benefits] under this chapter." Mass.Gen.L.Ann. ch. 152, Sec. 24 (emphasis added).[9] Until 1985, employment-induced emotional disabilities were considered fully "compensable" injuries under the workers' compensation statute, without regard to whether the disability resulted from employer negligence. See Foley v. Polaroid Corp., 381 Mass. 545, 413 N.E.2d 711, 714-15 (1980).
 
 
 27
 Clarke concedes that her negligence-based claims against KFC allege employment-induced emotional injury and, thus, would have been preempted under the pre -1985 workers' compensation statute. In 1985, however, the SJC held that employment-related emotional injuries likewise were "compensable" under the workers' compensation statute, even though the emotional injury resulted from such bona fide employer decisions as layoffs and interdepartmental transfers. Kelly's Case, 394 Mass. 684, 477 N.E.2d 582, 584-85 (1985) (noting that disallowance of workers' compensation for such emotional injuries is a policy decision for the Legislature, not the courts).
 
 
 28
 The ensuing uproar from the Massachusetts business community over the implications of Kelly's Case prompted the Legislature to amend the "personal injury" definition in chapter 152 to read:
 
 
 29
 Personal injuries shall include mental or emotional disabilities only where the predominant contributing cause of such disability is an event or series of events occurring within any employment.... No mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter.
 
 
 30
 See 1985 Mass. Acts 572 ("Workers' Compensation Reform Act"); 1986 Mass. Acts 662 (codified at Mass.Gen.L.Ann. ch. 152, Sec. 1(7A)). Although ostensibly a pro-employer enactment, serendipitously the 1985 amendment also presented claimants like Clarke with a basis for attempting to circumvent the broad preemption provision in section 24 of the workers' compensation statute. From the beginning, section 24 had preempted tort actions at common law, but only in respect to injuries compensable by disability benefits under the workers' compensation statute. See Mass.Gen.Laws Ann. ch. 152, Sec. 24. After the 1985 amendment, however, emotional injuries caused by an employer's "bona fide [ ] personnel action[s]"--[hereinafter otherwise: "BFPA"]--literally became "noncompensable" under the workers' compensation statute. Consequently, Clarke argues, if it can be established that her emotional injuries were caused by a good faith, albeit negligent, personnel decision on the part of KFC--for which she would not be entitled to workers' compensation benefits under chapter 152, amended section 1(7A), see supra p. 28--she would be entitled to redress her negligence-based tort claims in the courts by virtue of the "noncompensability" exception to section 24 preemption.
 
 
 31
 Clarke's argument cannot succeed, however, unless she can demonstrate both that (1) the decision not to screen KFC hirees, nor alter their working conditions to minimize the risk that Clarke be emotionally harmed by sexual harassment, constituted a "bona fide personnel action" within the meaning of amended section 1(7A); and (2) the 1985 Legislature, in rendering all BFPA-induced emotional injuries noncompensable under the workers' compensation statute, intended to deny BFPA claimants like Clarke the right to collect workers' compensation benefits, and, as an offsetting form of relief, to save their common law tort remedies from preemption under section 24. Since Clarke's argument plainly founders on the second prong, we simply assume, arguendo, that the personnel actions at issue qualify as BFPAs under amended section 1(7A).
 
 
 32
 Although there is no SJC decision directly in point, the interpretation Clarke urges was rejected recently by the Massachusetts Appeals Court, in Catalano v. First Essex Sav. Bank, 37 Mass.App.Ct. 377, 639 N.E.2d 1113, review denied, 419 Mass. 1101, 644 N.E.2d 225 (1994). The Catalano court noted that the 1985 amendments to the workers' compensation statute were in direct response to an invitation the SJC extended to the Legislature in Kelly's Case: to "determine, as a matter of public policy, whether one of the costs of doing business in this Commonwealth shall be the compensation of those few employees who do suffer emotional disability as a result of being laid off or transferred." Id. 639 N.E.2d at 1115 (quoting Kelly's Case, 477 N.E.2d at 584-85):
 
 
 33
 It is obvious that the Legislature wished to protect the employer from liability under the [Workers' Compensation] Act for claims arising out of bona fide personnel actions unless motivated by an intent to inflict emotional distress. In those circumstances, it seems unlikely that the Legislature intended to preserve a civil action for claims based on negligent infliction of emotional distress that arise from a bona fide personnel action. To do so would negate ... the purpose of relieving employers from the financial burdens of such claims....
 
 
 34
 Id. 639 N.E.2d at 1116.
 
 
 35
 Clarke correctly points out that the Catalano analysis constitutes dicta because the court dismissed the appeal on an alternate ground. Id. Nevertheless, persuasive, reasoned dicta may provide a valuable guide to statutory interpretation. See Gibson, 37 F.3d at 736 (absent explicit ruling by state's highest court, federal court sitting in diversity may consult "considered dicta") (citing Michelin Tires, 666 F.2d at 682); see also Bank of New England Old Colony, N.A. v. Clark, 986 F.2d 600, 603 (1st Cir.1993) (relying on "persuasive" dicta of United States Supreme Court); cf. also Sainz Gonzalez v. Banco de Santander-Puerto Rico, 932 F.2d 999, 1001 (1st Cir.1991) (declining to credit dicta unsupported by reasoned analysis); United States v. Rivera, 872 F.2d 507, 509 (1st Cir.) (same), cert. denied, 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989). Moreover, the Catalano analysis was prompted by the appeals court's express desire to resolve "the alleged uncertainty and confusion that purportedly exists among the members of the [Massachusetts] bar and public concerning the initiation of legal proceedings involving the claims raised in this appeal," Catalano, 639 N.E.2d at 1115, and the SJC summarily denied review.
 
 
 36
 The original workers' compensation statute effectively preempted a broad range of civil actions based on employment-related emotional injury, see supra p. 27, and one would expect any significant retreat from this longstanding legislative policy to be heralded with considerably greater clarity than is discernible in Mass.Gen.L.Ann. ch. 152, Sec. 1(7A). We agree with the appeals court that it would strain credulity and common sense to presume that the Legislature chose to limit employers' collective liability under the workers' compensation scheme, only to expose individual employers to greater liability in common law negligence suits based on bona fide personnel actions.
 
 III
 CONCLUSION
 
 37
 The grievous sexual harassment claims alleged by appellant were entitled to just adjudication in the first instance under the administrative claims process established by Massachusetts law. As the courts are powerless to reinstate legal remedies foreclosed by failure to comply with a mandatory administrative exhaustion requirement, the district court judgment dismissing the sexual harassment claim must be affirmed. Finally, the district court judgment dismissing the related common law tort claims must be affirmed on preemption grounds.
 
 
 38
 The district court judgment is affirmed. The parties shall bear their own costs.
 
 APPENDIX
 
 39
 A. Equal Rights Act, Mass.Ann.Laws ch. 93, sec. 102 (1994):
 
 
 40
 Section 102. Equal Rights for All Persons Within Commonwealth; Enforcement by Civil Action for Equitable Relief; Jurisdiction of Superior Court; Degree of Proof; Damages, Costs and Attorneys' Fees.
 
 
 41
 (a) All persons within the commonwealth, regardless of sex, race, color, creed or national origin, shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property....
 
 
 42
 (b) A person whose rights under the provisions of subsection (a) have been violated may commence a civil action for injunctive and other appropriate equitable relief, including the award of compensatory and exemplary damages[ ] ... in the superior court....
 
 
 43
 B. Fair Employment Practices Act, Mass.Ann.Laws ch. 151B, sec. 1 (1995):
 
 
 44
 Section 1. Definitions.
 
 As used in this chapter
 
 45
 ...
 
 
 46
 5. The term "employer" does not include ... any employer with fewer than six persons in his employ....
 
 
 47
 ....
 
 
 48
 18. The term "sexual harassment" shall mean sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... (b) ... [which] have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment. Discrimination on the basis of sex shall include, but not be limited to, sexual harassment.
 
 
 49
 Section 4. Unlawful Practices; Certain Records to be Kept; Employer, etc., Not Required to Grant Preferential Treatment to Any Individual or Group.
 
 It shall be an unlawful practice:
 
 50
 1. For an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex, sexual orientation, ... or ancestry of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification....
 
 
 51
 ....
 
 
 52
 16A. For an employer, personally or through its agents, to sexually harass any employee.
 
 
 53
 Section 5. Complaints Alleging Unlawful Practice or Violation of Certain Statutes; Proceedings Before Commission; Injunctive Relief; Award of Damages.
 
 
 54
 Any person claiming to be aggrieved by an alleged unlawful practice [listed in section 4] ... may ... make, sign and file with the commission a verified complaint in writing....
 
 
 55
 ....
 
 
 56
 ... Before or after a determination of probable cause hereunder such commissioner may also file a petition in equity in the superior court....
 
 
 57
 Section 6. Judicial Review of Order of Commission; Injunctive Relief.
 
 
 58
 Any complainant, respondent or other person aggrieved by such order of the commission may obtain judicial review thereof ... in the superior court
 
 
 59
 ...
 
 
 60
 Section 9. Chapter Construed Liberally; Inconsistent Laws; Procedure Exclusive; Damages or Injunctive Relief.
 
 
 61
 ... [A]s to acts declared unlawful by section four, the procedure provided in this chapter shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.
 
 
 62
 Any person claiming to be aggrieved by a practice made unlawful under this chapter or under chapter one hundred and fifty-one C, or by any other unlawful practice within the jurisdiction of the commission, may, at the expiration of ninety days after the filing of a complaint with the commission, or sooner if a commissioner assents in writing, but not later than three years after the alleged unlawful practice occurred, bring a civil action for damages or injunctive relief or both in the superior or probate court ... or in the housing court within whose district the alleged unlawful practice occurred if the unlawful practice involves residential housing.... An aggrieved person may also seek temporary injunctive relief in the superior, housing or probate court within such county at any time to prevent irreparable injury during the pendency of or prior to the filing of a complaint with the commission....
 
 
 63
 C. Equity Jurisdiction Statute, Mass.Ann.Laws ch. 214 (1995)
 
 
 64
 Section 1. General Equity Jurisdiction, Concurrent.
 
 
 65
 The supreme judicial and superior courts shall have original and concurrent jurisdiction of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, shall be courts of general equity jurisdiction....
 
 
 66
 Section 1C. Right to be Free From Sexual Harassment.
 
 
 67
 A person shall have the right to be free from sexual harassment, as defined in chapter one hundred and fifty-one B and one hundred and fifty-one C. The superior court shall have the jurisdiction in equity to enforce this right and to award damages.
 
 
 68
 Section 2. Statutory Equity Jurisdiction.
 
 
 69
 The supreme judicial court shall have original and exclusive jurisdiction of all civil actions in which equitable relief is sought cognizable under any statute and not within the jurisdiction conferred by section one, unless a different provision is made; and the superior court shall have like original and exclusive, or like original and concurrent, jurisdiction only if the statute so provides.
 
 
 
 [1]
 We review Rule 12(b)(6) dismissals de novo, accepting all well-pleaded allegations. Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir.1994)
 
 
 [2]
 A covered FEPA "employer" is one who has more than five employees. Id. Sec. 1(5)
 
 
 [3]
 While FEPA primarily targets employment -based discrimination, it also proscribes a variety of other discriminatory conduct--in housing, real estate, credit extension, insurance and banking--not directly relevant to the appeal
 
 
 [4]
 The superior court may set aside or modify an MCAD order only if it finds, according "due weight to the [MCAD's] experience, technical competence, and specialized knowledge," that the order was (1) unconstitutional, (2) beyond the MCAD's jurisdiction or statutory authority; (3) based upon an error of law; (4) issued pursuant to an unlawful procedure; (5) unsupported by substantial evidence; or (6) arbitrary and capricious. See Mass.Gen.L.Ann. ch. 30A, Sec. 14 (1995)
 
 
 [5]
 Although Clarke belatedly urges certification to the SJC, "[w]e are rarely receptive to ... requests for certification newly asserted on appeal." See Nieves v. University of Puerto Rico, 7 F.3d 270, 278 (1st Cir.1993); see also Fischer v. Bar Harbor Banking & Trust Co., 857 F.2d 4, 8 (1st Cir.1988), cert. denied, 489 U.S. 1018, 109 S.Ct. 1135, 103 L.Ed.2d 196 (1989). Nor will we resort to certification unless the issue presented is sufficiently unsettled under state law that we could not essay a "reasonably clear" prediction with adequate confidence. See Porter v. Nutter, 913 F.2d 37, 41 n. 4 (1st Cir.1990)
 
 
 [6]
 Clarke points to an unpublished superior court opinion entered after oral argument in this case, see Burman v. Boch Oldsmobile, Inc., No. 92-02690 (Mass.Sup.Ct. Apr. 11, 1995), which held Charland inapposite to sexual harassment claims. Even assuming it were proper to consider the unreported decision, see U.S. Ct. of App. 1st Cir. Rule 14, Burman contains no developed analysis and no discussion of the relevant statutory provisions or legislative history. See id. slip op. at 8 n. 5 ("[T]his Court views the Charland holding as specific, not extending to G.L. c. 214, Sec. 1C.")
 
 
 [7]
 Chapter 214, Sec. 1, recognizes that the superior courts and the SJC are endowed, concurrently, with the requisite general power possessed by courts in equity to fashion appropriate remedies in the exercise of their traditional equity jurisdiction. Chapter 214, Sec. 2, on the other hand, vests the SJC with "exclusive [original] jurisdiction of all civil actions in which equitable relief [authorized by statute ] is sought," unless the statute expressly provides that another court shall have exclusive or concurrent original jurisdiction over the statutory claims. Thus, contrary to Clarke's contention, the bare reference to superior court "jurisdiction" in Section 1C may have been intended merely to overcome the automatic "default" mechanism in Section 2--which would otherwise vest the SJC with exclusive original jurisdiction over all Section 1C claims for equitable relief--and to designate which other court (i.e., superior court) possesses jurisdiction once the Section 1C claimant has met the MCAD-exhaustion requirements imposed by FEPA section 9
 
 
 [8]
 The failure to file a claim with the MCAD did not bar the common law claims. See Felinska v. New Eng. Teamsters & Trucking Indus. Pension Fund, 855 F.Supp. 474 (D.Mass.1994) (citing Melley v. Gillette Corp., 397 Mass. 1004, 491 N.E.2d 252 (1986)). However, Clarke has not appealed the dismissal of the common law claims alleging intentional tortfeasance
 
 
 [9]
 Massachusetts workers may avoid section 24 preemption by expressly reserving their common law rights at the time they are hired. Id. Clarke made no such reservation